**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SYSMEX CORPORATION and SYSMEX
AMERICA, INC.,

        Plaintiffs,

      v.

BECKMAN COULTER, INC.,

        Defendant.

C.A. No.  19-1642-RGA-CJB

**JURY TRIAL DEMANDED**

**REDACTED
PUBLIC VERSION**

**PLAINTIFFS' APRIL 27, 2021 LETTER RESPONSE TO THE HONORABLE
<u>CHRISTOPHER J. BURKE REGARDING DEFENDANT'S MOTION TO AMEND</u>**

OF COUNSEL:

James R. Sobieraj
Robert S. Mallin
Joshua H. James
Daniel A. Parrish
Brinks Gilson & Lione
455 N. Cityfront Plaza Drive
NBC Tower – Suite 3600
Chicago, IL 60611
(312) 321-4200

Kelly E. Farnan (#4395)
Renée Mosley Delcollo (#6442)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
farnan@rlf.com
delcollo@rlf.com

*Attorneys for Plaintiffs*

Dated: April 27, 2021

## RICHARDS LAYTON & FINGER

Kelly E. Farnan
(302) 651-1705
farnan@rlf.com

April 27, 2021

**REDACTED**
**PUBLIC VERSION**

**BY CM/ECF**
The Honorable Christopher J. Burke
United States District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:   ***Sysmex Corp. et al v. Beckman Coulter, Inc.,***
       **C.A. No. 19-1642-RGA-CJB**

Dear Judge Burke:

Sysmex unequivocally denies that it has breached the Illinois (or this Court's) protective order. But Sysmex understands that this is not the time to refute the merits of BCI's allegations.[1] Rather, the only issue at present is whether the Court should grant BCI leave to file its amended pleading. It should not for the reasons set forth below.

**BCI Has Not Shown Good Cause:**  The Court's deadline for amending pleadings was October 1, 2020.  (D.I. 118.)  As a threshold matter, BCI must show "good cause" to modify that deadline to amend its answer and counterclaim at this time.  Fed. R. Civ. P. 16(b)(4);  *Sonos, Inc. v. D&M Hldgs. Inc.,* C.A. No. 14-1330-RGA, 2017 WL 476279, at *1 (D. Del. Feb. 3, 2017); *E. Minerals & Chemicals Co. v. Mahan,* 225 F.3d 330, 340 (3d Cir. 2000).  "Good cause is found when, despite diligence on the part of the party seeking to amend, the deadline in the scheduling order 'cannot reasonably be met.'"  *Sonos,* 2017 WL 476279, at *1.  To show good cause, BCI must show diligence in pursuing its new affirmative defense and counterclaims prior to the October 1, 2020 deadline for amendments.  *Id.* at *2.  BCI's amended pleading alleges violations dating back to June 2019 and has no explanation for why it waited 22 months to seek to add those claims to this case.  BCI's letter brief does very little to demonstrate good cause and omits several key facts.

**1.  BCI knew of Mr. Horie's involvement with Sysmex patent prosecution since 2019:** BCI argues that it requested a prosecution bar in the Illinois case because the Brinks firm "had prosecuted over 400 issued Sysmex patents since 2002."  (D.I. 236 at 1.)  That information was known to BCI from publicly available documents in the U.S.P.T.O. before Sysmex filed this suit.

If BCI was diligent, its counsel would have reviewed the publicly available file histories for the patents-in-suit shortly after Sysmex filed this suit on September 3, 2019, and prior to preparing BCI's answer and declaratory judgment counterclaims filed in October 2019.  (D.I. 7.)  In any event, Sysmex produced the prosecution histories for the patents-in-suit on December 30, 2019.  (D.I. 29, ¶7(a); Ex. 1.)  Thus, from the earliest days of this lawsuit, BCI knew that Mr. Horie was

---

[1] In this opposition, Sysmex does not argue futility but reserves those arguments for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in the event the Court allows the amendment.

The Honorable Christopher J. Burke
April 27, 2021
Page 2

involved in prosecution of the applications for the patents-in-suit, including the claim amendments in June 2019 that led to the issuance of the patents-in-suit.

**2. BCI knew that Mr. Horie was assisting the Sysmex litigation team since 2019:** BCI has known since at least October 2019 that Mr. Horie has been assisting the Sysmex litigation team. He attended depositions in the Illinois case on October 3-4, 17-18, and November 1 and 7-8 and 9, 2019. (Ex. 2; Ex. 3.) At the November 9 deposition, BCI's "Highly Confidential-Attorneys Eyes Only" documents were marked as exhibits and shown to the BCI witness (one of the named inventors of BCI's asserted patent) in Mr. Horie's presence. (Ex. 3 at 2-3.) BCI's counsel designated the entire deposition transcript "Highly Confidential-Attorneys Eyes Only," and never objected to Mr. Horie's attendance during, or after, the deposition. (Ex. 3 at 4.)

BCI acknowledges that "Mr. Horie has had access to Beckman Coulter's Highly Sensitive Technical Material at least as a member of the Brinks' email distribution group, BGLSysmex012Team@brinksgilson.com, where he has privately received confidential Beckman Coulter materials." (D.I. 236, Ex. J at 1.) BCI fails to inform the Court that BCI was aware that Mr. Horie was included in this email distribution list no later than August 5, 2020. (Ex. 4, at 1, 3; D.I. 236, Ex. M, at 36:15-38:12.) Nonetheless, BCI continued to send its confidential information to that email distribution list *after* August 5, 2020, knowing that it included Mr. Horie (Exs. 4-5), and BCI waited until February 1, 2021 to raise an objection to Mr. Horie's inclusion in the BGL email distribution list. (D.I. 236, Ex. J at 2.)

**3. BCI disclosed its awareness of Mr. Horie's prosecution activity in its IPR and pleadings in this Court:** On August 20, 2020, BCI filed four petitions for *inter partes* review of the two patents-in-suit. In one petition, BCI insinuated a violation of the Illinois protective order by arguing that Sysmex, through its expert witness, had used confidential information from the Illinois case in connection with the application that issued as the '351 patent-in-suit:

> Patent Owner filed the application that issued as the '351 patent three months after it had dismissed the first Delaware lawsuit and *after its expert obtained access to Petitioner's confidential information regarding the operation of its DxH products at issue in the Illinois action*. (Ex. 6; emphasis added.)

On October 2, 2020, BCI filed an amended counterclaim, in which it accused Mr. Horie of inequitable conduct. (D.I. 119.) In its response to Sysmex's motion to dismiss the counterclaim, BCI argued: "the pleadings indicate that Mr. Horie filed the patent applications leading to the asserted patents, drafted and amended the claims, and filed information disclosure statements. (D.I. 119, ¶¶ 37, 38, 40, 42.)" (D.I. 156 at 17.) BCI also argued: "Shortly after BCI asserted the Illinois Action, Sysmex filed continuation patent applications . . . and made multiple attempts to draft claims directed as precisely to BCI's hematology analyzers as possible . . . . Sysmex used the same law firm for both litigation and patent prosecution, and specifically sought the assistance of its longtime patent attorney there, Tadashi Horie." (*Id.* at 2-3.) Despite its knowledge of Mr. Horie's role in prosecution of the applications that issued as the patents-in-suit and his access to BCI confidential information in the Illinois litigation, BCI waited over six months after the Court's

The Honorable Christopher J. Burke
April 27, 2021
Page 3

deadline for amending pleadings to raise any new affirmative defense or counterclaims based on an alleged violation of the Illinois protective order.

BCI ignores this history and tries to claim that Sysmex's request for Mr. Horie to inspect BCI's source code in October 2020 first put BCI on notice that Mr. Horie may have had access to BCI confidential information. BCI's argument is misplaced because the October 2020 request was directed to a source code inspection *in this case*; BCI's proposed amended pleading alleges a violation of the Illinois protective order based on the alleged prohibited use of BCI confidential information produced in the Illinois case, and BCI knew of Mr. Horie's litigation role and access to BCI confidential information in the Illinois case by 2019.

Based on the foregoing facts, BCI has not and cannot show that it meets the standard for "good cause" and its motion to amend should be denied. *Sonos,* 2017 WL 476279, at *1-2.

**BCI's Motion Fails to Meet the Standard Under Rule 15:**  If a movant can show good cause required by Rule 16, the court may still deny the motion under Rule 15(a)(2) if there is undue delay or prejudice. *See Iceutica Pty Ltd. et al. v. Novitium Pharma LLC*, C.A. No. 18-599-CFC, 2019 WL 4604029, at *1 (D. Del. Sep. 23, 2019). Delay is "undue" when an unwarranted burden is placed on the court or when the movant had prior opportunities to amend. *See Cellectis S.A., v. Precision Biosciences*, 883 F.Supp.2d 526, 532 (D. Del. 2012).

    **1.  Even if BCI could demonstrate good cause, BCI unduly delayed in alleging a violation of the Illinois protective order after October 2020.**  Even if BCI were to allege it wasn't aware of any violation until October 2020, BCI served two sets of interrogatories after October 2020; none sought information regarding a violation of a protective order. (Ex. 15.)  BCI waited until December 22, 2020, less than 7 weeks prior to the initial February 5, 2021 discovery cut-off, to request any depositions, including Mr. Horie's deposition. (Ex. 7.)  BCI provides no reason for its delay in seeking discovery on an alleged violation of the Illinois protective order.

BCI waited until February 1, 2021, to first allege a violation of either protective order. (D.I. 236, Ex. J.)  BCI made this serious allegation without identifying a single Sysmex patent application that allegedly constituted a violation of a protective order. (*Id.*)  Sysmex quickly responded, and requested "the USPTO serial number of each patent application allegedly prosecuted by Mr. Horie that allegedly violates a protective order." (Ex. 8.) On February 12, BCI finally identified specific Sysmex patent applications. (Ex. 9.)  Sysmex promptly responded, noting that BCI had "identified applications where Mr. Horie may have filed a paper without any consideration of the limited scope of the prosecution bar." (Ex. 10.)  Sysmex asked BCI to explain its basis for alleging that any application allegedly violated a protective order. (*Id.*)  *More than 3 weeks passed* before BCI responded, and BCI still failed to explain how any Sysmex patent application violated the prosecution bar of a protective order. (Ex. 11.)  Moreover, March 9, 2021 was the first time that BCI mentioned that it would seek leave to amend to add an unclean hands affirmative defense and misappropriation of trade secrets and breach of contract claims.  (*Id.*)  BCI continued to evade Sysmex's repeated requests for an explanation of how any Sysmex patent application allegedly violated the prosecution bar of a protective order. (Ex. 12.)  The parties held a lengthy meet-and-confer on March 24, for which BCI requested a Court reporter. (Ex. 13.)  BCI did not explain how

The Honorable Christopher J. Burke
April 27, 2021
Page 4

prosecution of the '350 and '351 patents-in-suit constituted a violation of the Illinois Protective Order.[2] (*id.,* 33:2-34:22.) The parties reached an impasse (*id.*, 68:3-4, 69:4-13, 70:17-71:11), yet BCI still waited over 2 weeks, until the last day of discovery, to file its present motion, and never provided a copy in advance to Sysmex's counsel as promised during the meet-and-confer. (*Id.,* 20:22-21:8; *see also* Ex. 12 at 2.)

**2. BCI still has not asked the Illinois court to decide if its protective order has been violated:** BCI seeks to add an affirmative defense and counterclaims based on the violation of another Court's protective order. BCI's failure to first seek a ruling from the Illinois court on an alleged violation of its protective order is another example of BCI's undue delay. As a general rule, courts are reluctant to decide if another court's order has been violated. *See, e.g., W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, 198 F. Supp. 3d 366, 384 (D. Del. 2016) ("As an initial matter, the Court's view is that it is generally preferable to approach the court whose order has allegedly been violated with the evidence of the violation and allow that court to assess what to do about any misconduct that can be proven."); *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1290 (5th Cir. 1989) ("We are aware of no basis upon which a district court may assert subject matter jurisdiction over violations of orders issued in other federal courts.").

The Illinois court is well-suited to determine if its protective order was violated and if so, what relief would be appropriate. The Illinois court should decide if BCI's dubious contract claim is recognized under Illinois law.[3] *See Westinghouse Electric Corp. v. Newman & Holtzinger,* 39 Cal. App. 4th 1194, 1203-04 (2nd Cir. 1995) ("The question posed by these allegations is whether violation of either the protective order or the preceding agreement will support a cause of action for breach of contract. The answer is no."); *Assurance Co. v. Waldman*, No. 1:13-CV-179, 2013 WL 6669249, at *3 (S.D. Ohio Dec. 18, 2013) ("[C]asting of the alleged violations of the protective order as contract claims seems dubious as a matter of state law."). The Illinois court also should decide if there is any merit to BCI's trade secret claim.[4] If BCI has any valid claims, they arose in Illinois, not in Delaware, and BCI admitted that it could bring its counterclaims in Illinois. (Ex. 13 at 7:8-18 and 14:24-15:6).

Most likely, BCI still has not approached the Illinois court because BCI knows that it would not be able to meet its burden under the Illinois protective order. The prosecution bar in the Illinois

---

[2] Even now, BCI's proposed counterclaim only makes the conclusory allegation that "[t]he subject matter of the '417 and '694 applications relates to the field of invention of the '012 patent." (D.I. 236, Ex. A, ¶96.) Notably, BCI's motion does not include a copy of the '012 patent.

[3] The cases cited by BCI do not support its argument that an alleged violation of the Illinois protective order is an independent basis for a breach of contract claim. *Rotex* and *Orthoflex* merely note that a protective order can be construed like a contract; neither case addresses a breach of contract claim. *Wachtell* did not address the issue of whether under New York law, an independent cause of action exists for breach of a court order. In *New Wave Innovations,* the court dismissed the claim that relied on a breach of a protective order.

[4] BCI's trade secret claim alleges that Mr. Horie used BCI source code produced in the Illinois case to amend the claims for the patents-in-suit. (D.I. 236, Ex. A, ¶¶141-154.) However, BCI produced only 45 pages of source code in Illinois, and there is no mention of body fluid in them.

The Honorable Christopher J. Burke
April 27, 2021
Page 5

protective order is limited to "any patent application *pertaining to the field of the invention of the patent/s-in-suit*." (D.I. 236, Ex. C, ¶10 (emphasis added).) The only patent-in-suit in Illinois is U.S. Patent No. 6,581,012, which is directed to a software architecture for an integrated clinical laboratory system, based on object-oriented programming. (Ex. 14.) The field of invention, claims, and terms for claim construction in the '012 patent and the patents-in-suit-here are completely different. (*See., e.g.,* Ex. 16-18.) The figures and written description of the patents are different. (*Compare* Ex. 14 *with* D.I. 1, Exs. A-B.) Indeed, key terms from the '350 and '351 patents-in-suit, such as "controller programmed", "blood measuring mode", "body fluid measuring mode", "electrical detector", "optical detector", "polynucleated cells", and "mononucleated cells" do not even appear in the '012 patent. (Ex. 14.) Similarly, the key terms in the '012 patent, such as "extensible object-based architecture", "programming objects", "specialized," "published interfaces" and "integrated workflow automation layer" are not found anywhere in the patents-in-suit here. (D.I. 1, Exs. A-B.) The Illinois court has held three days of Markman hearings on the '012 patent, and would quickly recognize that the '350 and '351 patents do not pertain to the field of invention of the '012 patent. BCI also ignores it bears a heavy burden of showing a violation of a protective order. *See, e.g., INVISTA N. Am. S.á.r.l. v. M&G USA Corp.*, No. 11-1007-SLR-CJB, 2014 U.S. Dist. LEXIS 67848, at *23-*24 (D. Del. Apr. 14, 2014) ("[A party] bears a heavy burden in showing that [another party] is guilty of civil contempt, and must demonstrate that [party's] conduct unambiguously violated the express terms of the . . . Order.").

**3.  Sysmex will be prejudiced if BCI's untimely amendment is allowed to proceed:**  BCI seeks to substantially expand this case after the close of fact discovery.  BCI does not identify the "limited discovery" that it would take if the Court grants its motion.  It likely would include intrusive discovery of Sysmex's litigation counsel, raising complex issues of privilege. (*See* Ex. 13 at 18:11-19:10; 42:13-49:4.)  BCI also ignores that Sysmex will need discovery, such as what steps BCI took to protect its alleged trade secrets, and whether BCI has clean hands to seek equitable relief.  BCI's new claim would create the same prejudice recognized in *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011) ("[A]llowing defendant's motion at this late stage would place an unwarranted burden on the court and prejudice plaintiffs in several respects, most notably, opening discovery for the purpose of allowing plaintiffs an opportunity to respond to the new claims cannot be accomplished while maintaining the current trial date.").  Despite fact discovery having closed and a trial date being set, BCI has not explained in any way how these claims can possibly be added in any reasonable way.

Respectfully,

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)


cc:  All Counsel of Record (via CM/ECF)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 27, 2021, true and correct copies of the foregoing

document were caused to be served on the following counsel of record as indicated:

<u>BY E-MAIL</u>
Melanie K. Sharp
James L. Higgins
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

<u>BY E-MAIL</u>
David M. Airan
Wesley O. Mueller
Aaron R. Feigelson
Nicole E. Kopinski
Wallace H. Feng
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601


*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)