**WILMINGTON**
RODNEY SQUARE

YOUNG
CONAWAY

**Melanie K. Sharp**
P 302.571.6681
msharp@ycst.com

MAY 4, 2021

**BY E-FILE**
The Honorable Christopher J. Burke
United States District Court of Delaware
844 North King Street
Wilmington, DE  19801

**REDACTED - PUBLIC VERSION**

Re:   *Sysmex Corporation ("SCorp") and Sysmex America, Inc. ("SAI") (collectively,
      "Sysmex") v. Beckman Coulter, Inc. ("BCI"),* C.A. No.: 19-1642-RGA-CJB

Dear Judge Burke:

     I write on behalf of my client, BCI, in reply to Sysmex's opposition to BCI's motion for leave to amend its Answer and Counterclaims.  Here, Sysmex ignores the allegations that form the crux of the Second Amended Answer and Counterclaims: (1) Mr. Tadashi Horie of the firm Brinks, Gilson, & Lione ("Brinks") unlawfully used BCI's source code and other confidential information to amend the claims of the Asserted Patents, and (2) Sysmex and Brinks failed to limit Mr. Horie's access to such information.  These allegations are based on information that BCI could not have learned before October 1, 2020, the deadline for amendments.  The Court has good cause to grant leave, and Sysmex's claims of undue delay and prejudice are meritless.

1.    <u>BCI Has Met the Standard for Good Cause</u>

     Good cause exists when the party seeking leave could not have uncovered the factual basis for its amendment until after the deadline has run.  *See Int'l Constr. Prod. LLC v. Caterpillar Inc.,* 2018 WL 4611216, at *2 (D. Del. Sept. 26, 2018) (good cause when "Plaintiff only discovered the evidence motivating its motion for leave to amend" after the deadline to amend had passed); *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.,* 295 F. Supp. 2d 430, 433 (D. Del. 2003) (good cause when the movant "was unaware of the basis" for its claims until after the deadline to amend).  This is precisely the situation here.

     BCI had no reason to suspect that Mr. Horie had misused source code information until October 27, 2020, when Sysmex requested that he help inspect BCI source code.  (Ex. H.) Before October 27, Sysmex had concealed from BCI all facts relating to Mr. Horie's improper conduct.  Nothing in Sysmex's prior communications with BCI suggested that Mr. Horie, with the permission of Sysmex and Brinks, had used BCI's source code for prosecution.  Nor was Mr. Horie's misappropriation of source code revealed in past depositions or in documents produced by Sysmex.  But on October 27, Sysmex showed no qualms about Mr. Horie inspecting BCI source code, thus raising BCI's attention.  Despite its diligence, BCI could not have pursued its new theories before the October 1 deadline because it was "unaware of the bas[es]" for these theories. *Callaway,* 295 F. Supp. 2d at 433.  The Court should, therefore, permit leave.

     Sysmex's assertion that BCI was aware of all relevant information by August 2020 is incorrect.  Sysmex cites to various documents such as file-wrappers and papers that BCI filed, but none of those materials indicate that Mr. Horie himself, with blessings from Sysmex and Brinks, would have accessed BCI's source code for prosecution or even considered doing so.

**Young Conaway Stargatt & Taylor, LLP**

2.     <u>BCI Did Not Unduly Delay in Amending Its Answer and Counterclaims</u>

On December 22, 2020, BCI informed Sysmex, through Brinks, of its intention to depose Mr. Horie because "[a] deposition is, perhaps, the best method of assessing [] credibility and discovering additional facts []." *Am. Home Assur. Co. v. ZIM JAMAICA,* 418 F. Supp. 2d 537, 550 (S.D.N.Y. 2006). With fact discovery not ending until February 5, 2021, BCI had ample time. Yet, in the same breath as admonishing BCI about these "serious allegations," Sysmex now suggests that BCI should have rushed to take the deposition of Mr. Horie and to seek leave to amend its answer. Indeed, this suggestion is belied by the fact that it took Brinks over a week to agree to accept a simple deposition subpoena on Mr. Horie's behalf. (Ex. N.)

BCI brought this motion only after BCI gave Sysmex advance notice of its amendments *and* only after there was a clear impasse. *See Eleutian Tech., LLC v. Glob. Educ. Techs.,* LLC, 2009 WL 10672362, at *4 (D. Wyo. Jan. 23, 2009) (finding no undue delay when the movant "notified the parties of its intent to amend the complaint well in advance and negotiated in good faith with the parties for months until an impasse was reached"). In his deposition on January 15, 2021, Mr. Horie did not dispute that he had unfettered access to BCI's source code production when prosecuting the Asserted Patents. (Ex. O.) Sysmex later produced a new privilege log, which only buttressed BCI's theories on Mr. Horie's involvement. (Ex. P.) In an effort to mitigate damage, BCI requested on February 1 that Sysmex implement remedial measures. (Ex. Q.) From February to March 2021, the parties met and conferred twice and exchanged emails about Mr. Horie's misappropriation. During this time, Sysmex repeatedly denied impasse and asked BCI for explanations—which BCI provided—to consider the "serious allegations" that stemmed from Sysmex's own misconduct. (Exs. K, Q.) To no avail, BCI repeatedly asked Sysmex to explain how Mr. Horie's prosecution of the '350 and '351 patents did not violate the Illinois protective order, as they relate to the same accused and covered products as BCI's '012 patent, both involve the programming of hematology analyzers, and the same source code was inspected for both litigations. (Exs. R, S, T; Sysmex Ex. 9.) On March 9, BCI notified Sysmex of its intention to amend and reiterated supporting facts. (Ex. R.) At the meet-and-confer on March 24, the parties expressed clearly irreconcilable views. BCI promptly thereafter moved for leave to amend. In arguing that BCI should have pursued its claims in the Illinois case, Sysmex misinterprets BCI's cited decisions and advances an argument that has no bearing on the undue delay inquiry.[1] Tellingly, none of Sysmex's cited cases shows that undue delay exists if a party files amendments in one jurisdiction, but not in another. Moreover, judicial efficiency suggests this Court is the more appropriate forum, as it is where the ill-obtained patents are in litigation.[2]

3.     <u>Sysmex Is Not Unduly Prejudiced</u>

Sysmex has not met its burden of showing undue prejudice. But for Sysmex's concealment of the misappropriation, these claims would have been asserted earlier. Further, Sysmex fails to demonstrate that discovery into the relevant issues would not be limited. *See Rudy Fabiano Architects v. Glob. Fitness Holdings,* 2006 WL 8457428, at *2 (D.N.J. Feb. 2, 2006) ("Some limited discovery does not amount to the unfair disadvantage that must exist to justify denial of amendment"). In fact, this Court has held that additional discovery is not a sufficient basis for denying leave. *Int'l Constr. Prod.,* 2018 WL 4611216, at *4. Given that depositions are still pending and trial is not until February, 2022, Sysmex will not suffer any undue prejudice if leave is granted.

---

[1] Contrary to Sysmex's view, this Court *can* adjudicate breach of contract claims. *See New Wave Innovations, Inc. v. Greenberg,* 2015 WL 5118130, at *4 (S.D. Fla. Aug. 31, 2015) (examining protective order breach and dismissing claim only because damages not pleaded).

[2] In any event, BCI's counterclaims will proceed either here or in a new, separate action.

**Young Conaway Stargatt & Taylor, LLP**

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

cc:     Counsel of Record, Kelly F. Farnan, Esquire (by e-mail)

28076745.1

# EXHIBIT N

| From: | Mallin, Robert |
|---|---|
| To: | Feng, Wallace |
| Cc: | Beckman-Sysmex-Litigation; Sharp, Melanie; Lee, Steven W.; Chacko, Anupa; Sobieraj, James; James, Joshua; Parrish, Daniel; "farnan@rlf.com"; "delcollo@rlf.com"; BGLSysmex012Team |
| Subject: | RE: Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition |
| Date: | Tuesday, January 5, 2021 4:46:48 PM |

Wallace,

We confirm Mr. Sibley's deposition for Feb 1.

Mr. Horie is available for deposition on Friday, January 15, 2021. Please provide us with a subpoena with the new date and notice that the deposition will occur remotely.

Regards
Robert

**Robert Mallin**
Intellectual Property Attorney
312.321.4221 | Direct
773.294.4419 | Mobile
rmallin@brinksgilson.com
Mallin Biography
www.brinksgilson.com

**Assistant:** Joan Schumaker
312.245.3402 |
jschumaker@brinksgilson.com

**BRINKS GILSON & LIONE**
NBC Tower - Suite 3600 | 455 N. Cityfront Plaza Drive | Chicago, IL 60611

**Please Note:** This message is intended for the individual or entity named above and may constitute a privileged and confidential communication. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete the message from your system. Thank you.

**From:** Feng, Wallace <wfeng@leydig.com>
**Sent:** Monday, January 4, 2021 4:37 PM

**To:** Mallin, Robert <rmallin@brinksgilson.com>
**Cc:** Beckman-Sysmex-Litigation <Beckman-Sysmex-Litigation@leydig.com>; Sharp, Melanie
<msharp@ycst.com>; Lee, Steven W. <SLee@ycst.com>; Chacko, Anupa <AChacko@ycst.com>;
Sobieraj, James <jsobieraj@brinksgilson.com>; James, Joshua <jjames@brinksgilson.com>; Parrish,
Daniel <dparrish@brinksgilson.com>; 'farnan@rlf.com' <farnan@rlf.com>; 'delcollo@rlf.com'
<delcollo@rlf.com>; BGLSysmex012Team <BGLSysmex012Team@brinksgilson.com>
**Subject:** [EXT] RE: Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition

Robert,

Mr. Sibley is available on February 1. We are still working to confirm the deposition date for
Mr. Blackwood.

Please provide us with Mr. Horie's availability as soon as possible.

Regards,

Wallace

**Wallace Feng | Leydig, Voit & Mayer, Ltd.**
Attorney at Law | Intellectual Property
Two Prudential Plaza, Suite 4900 | Chicago, IL 60601-6745
Tel: 312-616-5657
wfeng@leydig.com | www.leydig.com

This e-mail message is intended only for individual(s) to whom it is addressed and may contain
information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under
applicable law. If you believe you have received this message in error, please advise the sender by
return e-mail and delete it from your mailbox. Thank you

---

**From:** Mallin, Robert <rmallin@brinksgilson.com>
**Sent:** Monday, January 4, 2021 10:26 AM
**To:** Feng, Wallace <wfeng@leydig.com>
**Cc:** Beckman-Sysmex-Litigation <Beckman-Sysmex-Litigation@leydig.com>; Sharp, Melanie
<msharp@ycst.com>; Lee, Steven W. <SLee@ycst.com>; Chacko, Anupa <AChacko@ycst.com>;
Sobieraj, James <jsobieraj@brinksgilson.com>; James, Joshua <jjames@brinksgilson.com>; Parrish,
Daniel <dparrish@brinksgilson.com>; 'farnan@rlf.com' <farnan@rlf.com>; 'delcollo@rlf.com'
<delcollo@rlf.com>; BGLSysmex012Team <BGLSysmex012Team@brinksgilson.com>
**Subject:** RE: Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition

Wallace

We are checking on Mr. Horie's availability.

In the meantime, we are still waiting for you to provide us with availability

dates for Mr. Sibley and Mr. Blackwood.   Please provide us with proposed dates for those depositions by the close of business today.

Regards
Robert


**Robert Mallin**
Intellectual Property Attorney
312.321.4221 | Direct
773.294.4419 | Mobile
rmallin@brinksgilson.com
Mallin Biography
www.brinksgilson.com

**Assistant:** Joan Schumaker
312.245.3402 |
jschumaker@brinksgilson.com

**BRINKS GILSON & LIONE**
NBC Tower - Suite 3600 | 455 N. Cityfront Plaza Drive | Chicago, IL 60611

**Please Note:** This message is intended for the individual or entity named above and may constitute a privileged and confidential communication. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete the message from your system. Thank you.

---

**From:** Feng, Wallace <wfeng@leydig.com>
**Sent:** Thursday, December 31, 2020 7:58 PM
**To:** Mallin, Robert <rmallin@brinksgilson.com>
**Cc:** Beckman-Sysmex-Litigation <Beckman-Sysmex-Litigation@leydig.com>; Sharp, Melanie <msharp@ycst.com>; Lee, Steven W. <SLee@ycst.com>; Chacko, Anupa <AChacko@ycst.com>; Sobieraj, James <jsobieraj@brinksgilson.com>; James, Joshua <jjames@brinksgilson.com>; Parrish, Daniel <dparrish@brinksgilson.com>; 'farnan@rlf.com' <farnan@rlf.com>; 'delcollo@rlf.com' <delcollo@rlf.com>; BGLSysmex012Team <BGLSysmex012Team@brinksgilson.com>
**Subject:** [EXT] RE: Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition

Robert,

We confirm that Mr. Horie's deposition will be conducted via remote means, similar to the manner for the depositions of Messrs. Grace and Dunbabin, and as we presently expect will likely be the case for all depositions in this litigation.  This will be reflected in the subpoena.  Please confirm Mr. Horie's availability for January 13, or provide alternate dates when he can be made available.


Regards,

Wallace


**Wallace Feng | Leydig, Voit & Mayer, Ltd.**
Attorney at Law | Intellectual Property
Two Prudential Plaza, Suite 4900 | Chicago, IL 60601-6745
Tel: 312-616-5657
wfeng@leydig.com | www.leydig.com

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you

---

**From:** Mallin, Robert <rmallin@brinksgilson.com>
**Sent:** Thursday, December 31, 2020 4:11 PM
**To:** Feng, Wallace <wfeng@leydig.com>
**Cc:** Beckman-Sysmex-Litigation <Beckman-Sysmex-Litigation@leydig.com>; Sharp, Melanie <msharp@ycst.com>; Lee, Steven W. <SLee@ycst.com>; Chacko, Anupa <AChacko@ycst.com>; Mallin, Robert <rmallin@brinksgilson.com>; Sobieraj, James <jsobieraj@brinksgilson.com>; James, Joshua <jjames@brinksgilson.com>; Parrish, Daniel <dparrish@brinksgilson.com>; 'farnan@rlf.com' <farnan@rlf.com>; 'delcollo@rlf.com' <delcollo@rlf.com>; BGLSysmex012Team <BGLSysmex012Team@brinksgilson.com>
**Subject:** RE: Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition

Wallace

We are willing to accept service of a new subpoena that includes a mutually agreeable date for the deposition, and that specifically provides that the deposition will be conducted by remote means such as, for example, a web-based system such as how we accommodated BCI's request in relation to Mr. Grace's and Mr. Dunbabin's depositions.


Regards
Robert

**Robert Mallin**

Intellectual Property Attorney
312.321.4221 | Direct
773.294.4419 | Mobile
rmallin@brinksgilson.com
Mallin Biography
www.brinksgilson.com

**Assistant:** Joan Schumaker
312.245.3402 |
jschumaker@brinksgilson.com

**BRINKS GILSON & LIONE**
NBC Tower - Suite 3600 | 455 N. Cityfront Plaza Drive | Chicago, IL 60611

**Please Note:** This message is intended for the individual or entity named above and may constitute a privileged and confidential communication. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete the message from your system. Thank you.

---

**From:** Feng, Wallace <wfeng@leydig.com>
**Sent:** Tuesday, December 29, 2020 3:58 PM
**To:** Mallin, Robert <rmallin@brinksgilson.com>; Sobieraj, James <jsobieraj@brinksgilson.com>; James, Joshua <jjames@brinksgilson.com>; Parrish, Daniel <dparrish@brinksgilson.com>; 'farnan@rlf.com' <farnan@rlf.com>; 'delcollo@rlf.com' <delcollo@rlf.com>; BGLSysmex012Team <BGLSysmex012Team@brinksgilson.com>
**Cc:** Beckman-Sysmex-Litigation <Beckman-Sysmex-Litigation@leydig.com>; Sharp, Melanie <msharp@ycst.com>; Lee, Steven W. <SLee@ycst.com>; Chacko, Anupa <AChacko@ycst.com>
**Subject:** [EXT] RE: Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition

Robert,

Attached is a draft of the subpoena for review.  Please confirm whether you will accept service of the subpoena on behalf of Mr. Horie by 6:00 pm today.

Regards,

Wallace

**Wallace Feng | Leydig, Voit & Mayer, Ltd.**
Attorney at Law | Intellectual Property

Two Prudential Plaza, Suite 4900 | Chicago, IL 60601-6745
Tel: 312-616-5657
wfeng@leydig.com | www.leydig.com

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you

**From:** Mallin, Robert <rmallin@brinksgilson.com>
**Sent:** Wednesday, December 23, 2020 1:16 PM
**To:** Feng, Wallace <wfeng@leydig.com>; Sobieraj, James <jsobieraj@brinksgilson.com>; James, Joshua <jjames@brinksgilson.com>; Parrish, Daniel <dparrish@brinksgilson.com>; 'farnan@rlf.com' <farnan@rlf.com>; 'delcollo@rlf.com' <delcollo@rlf.com>; BGLSysmex012Team <BGLSysmex012Team@brinksgilson.com>
**Cc:** Beckman-Sysmex-Litigation <Beckman-Sysmex-Litigation@leydig.com>; Sharp, Melanie <msharp@ycst.com>; Lee, Steven W. <SLee@ycst.com>; Chacko, Anupa <AChacko@ycst.com>
**Subject:** RE: Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition

Wallace

Please send us the subpoena for review and we will get back to you.

Regards
Robert

**Robert Mallin**
Intellectual Property Attorney
312.321.4221 | Direct
773.294.4419 | Mobile
rmallin@brinksgilson.com
Mallin Biography
www.brinksgilson.com

**Assistant:** Joan Schumaker
312.245.3402 |
jschumaker@brinksgilson.com

**BRINKS GILSON & LIONE**
NBC Tower - Suite 3600 | 455 N. Cityfront Plaza Drive | Chicago, IL 60611

**Please Note:** This message is intended for the individual or entity named above and may constitute a privileged and confidential communication. If you are not

the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete the message from your system. Thank you.

---

**From:** Feng, Wallace <wfeng@leydig.com>
**Sent:** Tuesday, December 22, 2020 12:56 PM
**To:** Sobieraj, James <jsobieraj@brinksgilson.com>; Mallin, Robert <rmallin@brinksgilson.com>; James, Joshua <jjames@brinksgilson.com>; Parrish, Daniel <dparrish@brinksgilson.com>; 'farnan@rlf.com' <farnan@rlf.com>; 'delcollo@rlf.com' <delcollo@rlf.com>; BGLSysmex012Team <BGLSysmex012Team@brinksgilson.com>
**Cc:** Beckman-Sysmex-Litigation <Beckman-Sysmex-Litigation@leydig.com>; Sharp, Melanie <msharp@ycst.com>; Lee, Steven W. <SLee@ycst.com>; Chacko, Anupa <AChacko@ycst.com>
**Subject:** [EXT] Sysmex v. Beckman Coulter 19-1642 (RGA-CJB): Deposition

**Caution - External Email**
Counsel,

BCI intends to depose Tadashi Horie in this case.  Please confirm that Brinks Gilson & Lione will accept service of a subpoena on behalf of Mr. Horie.

Please respond by the close of business today.

Thank you,

Wallace


**Wallace Feng | Leydig, Voit & Mayer, Ltd.**
Attorney at Law | Intellectual Property
Two Prudential Plaza, Suite 4900 | Chicago, IL 60601-6745
Tel: 312-616-5657
wfeng@leydig.com | www.leydig.com

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you

# EXHIBIT O

TADASHI HORIE                                       January 15, 2021
Highly Confidential

1                  IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF DELAWARE

3

4

5    SYSMEX CORPORATION and

6    SYSMEX AMERICA, INC.,

7                      Plaintiffs,

8          vs.                      C.A. No.: 19-1642-RGA-CJB

9    BECKMAN COULTER, INC.,

10                     Defendant.

11   _____

12

13                   *** HIGHLY CONFIDENTIAL***

14

15        The Videotaped Deposition of TADASHI HORIE,

16   Appearing Remotely from Chicago, Illinois,

17   Commencing at 9:35 a.m.,

18   Friday, January 15, 2021,

19   Before Rebecca L. Russo, CSR-2759, RMR, CRR.

20   Appearing Remotely from Kent County, Michigan.

21

22

23

24

25

TADASHI HORIE                                                    January 15, 2021
Highly Confidential

<table>
<tr><td colspan="2">Page 2</td></tr>
<tr><td>1</td><td>REMOTE APPEARANCES:</td></tr>
<tr><td>2</td><td></td></tr>
<tr><td>3</td><td>ROBERT S. MALLIN</td></tr>
<tr><td>4</td><td>JAMES R. SOBIERAJ</td></tr>
<tr><td>5</td><td>DAVID S. FLEMING</td></tr>
<tr><td>6</td><td>Brinks Gilson & Lione</td></tr>
<tr><td>7</td><td>455 North Cityfront Plaza Drive</td></tr>
<tr><td>8</td><td>NBC Tower - Suite 3600</td></tr>
<tr><td>9</td><td>Chicago, Illinois 60611</td></tr>
<tr><td>10</td><td>312.321.4200</td></tr>
<tr><td>11</td><td>rmallin@brinksgilson.com</td></tr>
<tr><td>12</td><td>jsobieraj@brinksgilson.com</td></tr>
<tr><td>13</td><td>dfleming@brinksgilson.com</td></tr>
<tr><td>14</td><td>    Appearing on behalf of the Plaintiffs.</td></tr>
<tr><td>15</td><td></td></tr>
<tr><td>16</td><td></td></tr>
<tr><td>17</td><td></td></tr>
<tr><td>18</td><td></td></tr>
<tr><td>19</td><td></td></tr>
<tr><td>20</td><td></td></tr>
<tr><td>21</td><td></td></tr>
<tr><td>22</td><td></td></tr>
<tr><td>23</td><td></td></tr>
<tr><td>24</td><td></td></tr>
<tr><td>25</td><td></td></tr>
</table>

Page 4

1        TABLE OF CONTENTS
2
3   WITNESS                                    PAGE
4   TADASHI HORIE
5
6   EXAMINATION BY MR. FEIGELSON                 9
7
8            EXHIBITS
9   EXHIBIT                                    PAGE
10  (Exhibits remotely introduced and
11     provided electronically to the reporter)
12
13  DEPOSITION EXHIBIT DDX-0026         31
14     (Email from Nicole Kopinski dated
15  08-05-2020)
16  DEPOSITION EXHIBIT DDX-0027         35
17     (Email from
18  postmaster@brinkshofer.com dated
19  08-05-2020)
20  DEPOSITION EXHIBIT DDX-0028         51
21     (US Patent Application Publication
22  No. US 2017/0363651)
23  DEPOSITION EXHIBIT DDX-0029         52
24     (US Patent Application Publication
25  No. US 2019/0285520)

Page 3

1   AARON R. FEIGELSON
2   WESLEY O. MUELLER
3   Leydig Voit & Mayer Ltd
4   Two Prudential Plaza
5   180 North Stetson Avenue
6   Suite 4900
7   Chicago, Illinois 60601
8   312.616.5600
9   afeigelson@leydig.com
10  wmueller@leydig.com
11      Appearing on behalf of the Defendants.
12
13
14
15  ALSO PRESENT:
16  Travis Jewell - US Legal Support Video Technician
17     (Appearing Remotely Via Zoom)
18
19
20
21
22
23
24
25

Page 5

1   DEPOSITION EXHIBIT DDX-0030         57
2      (Email Chain Re Source Code
3   Inspection)
4   DEPOSITION EXHIBIT DDX-0031         62
5      (US Patent No. 10,151,746)
6   DEPOSITION EXHIBIT DDX-0032         68
7      (File History for Patent No.
8   10,151,746)
9   DEPOSITION EXHIBIT DDX-0033         88
10     (Technical Testing of a Beckman
11  Coulter LH 750)
12  DEPOSITION EXHIBIT DDX-0034        104
13     (Sysmex Operator's Manual -
14  Automated Hematology Analyzer
15  XE-2100)
16  DEPOSITION EXHIBIT DDX-0035        113
17     (First Amended Answer and
18  Counterclaims of Defendant Beckman
19  Coulter, Inc.)
20  DEPOSITION EXHIBIT DDX-0036        131
21     (Sysmex Operator's Manual -
22  Automated Hematology Analyzer
23  XE-2100)
24  DEPOSITION EXHIBIT DDX-0037        144
25     (XE-Series Body Fluid Application)

TADASHI HORIE                                          January 15, 2021
Highly Confidential

Page 6

| 1 | DEPOSITION EXHIBIT DDX-0038 | 151 |
| 2 | (Letter from Department of Health |
| 3 | and Human Services) |
| 4 | DEPOSITION EXHIBIT DDX-0039 | 155 |
| 5 | (Sysmex Automated Hematology |
| 6 | Analyzer XT-200i/XT-1800i Instruction |
| 7 | for Use (North America Edition) |
| 8 | DEPOSITION EXHIBIT DDX-0040 | 162 |
| 9 | (XT-Series Body Fluid Application) |
| 10 | DEPOSITION EXHIBIT DDX-0041 | 166 |
| 11 | (510(k) Summary of Safety and |
| 12 | Effectiveness) |
| 13 | DEPOSITION EXHIBIT DDX-0042 | 176 |
| 14 | (Sysmex Privilege Log) |

Page 7

1  Appearing Remotely from Chicago, Illinois
2  Friday, January 15, 2021
3  9:35 a.m.
4
5
6
7                 VIDEO TECHNICIAN:  We are now on the
8  record.  Participants should be aware that this
9  proceeding is being recorded and, as such, all
10  conversations held will be recorded unless there's a
11  request and agreement to go off the record.
12                 Private conversations and/or
13  attorney-client interactions should be held outside
14  the presence of the remote interface.
15                 For the purpose of creating a witness-only
16  video recording, the witness is being spotlighted on
17  all the video screens while on speaker view.  We ask
18  that the witness not remove the spotlight setting
19  during the deposition, as it may cause other
20  participants to appear on the final video rather than
21  just the witness.
22                 For anyone who doesn't want the witness's
23  video to take up a large part of your screen, you may
24  click the gallery view button in the upper right
25  corner of the RemoteDepo interface.

Page 8

1                 This is the remote video-recorded
2  deposition of Tadashi Horie, being taken on Friday,
3  January 15th, 2021.  The time is now 1435 UTC.  We are
4  here in the matter of Sysmex versus Beckman Coulter.
5                 My name is Travis Jewell, remote video
6  technician, on behalf of US Legal Support, located at
7  200 West Jackson, Chicago, Illinois.  I am not related
8  to any party in this action, nor am I financially
9  interested in the outcome.
10                 At this time, will the reporter on behalf
11  of US Legal Support please enter the statement for
12  remote proceedings into the record.
13                 COURT REPORTER:  The attorneys
14  participating in this deposition acknowledge that I am
15  not physically present in the deposition room and that
16  I will be reporting this deposition remotely.  They
17  further acknowledge that in lieu of an oath
18  administered in person, the witness will verbally
19  declare his testimony in this matter is under penalty
20  of perjury.
21                 The parties and their counsel consent to
22  this arrangement and waive any objections to this
23  manner of reporting.
24                 Please indicate your agreement by stating
25  your name and your agreement on the record.

Page 9

1                 MR. FEIGELSON:  Aaron Feigelson, on behalf
2  of Defendant Beckman Coulter.  I agree.
3                 MR. MALLIN:  Robert Mallin, on behalf of
4  Plaintiff Sysmex Corporation and Sysmex America.  We
5  agree.
6                 TADASHI HORIE,
7  was thereupon called as a witness herein, and after
8  having first been duly sworn to testify to the truth,
9  the whole truth and nothing but the truth, was
10  examined and testified as follows:
11                 EXAMINATION
12  BY MR. FEIGELSON:
13  Q.  Good morning, Mr. Horie.
14  A.  Hi, how are you?
15  Q.  I'm good.  We'll try to keep this as painless as we
16      can today.
17  A.  Okay.
18  Q.  Are you represented by an attorney today?
19  A.  Yes.
20  Q.  Okay, and who is that attorney?
21  A.  Robert Mallin, of Brinks Gilson, and David Fleming, of
22      Brinks Gilson.
23  Q.  And you understand that you're under oath?
24  A.  Yes.
25  Q.  You understand that your oath is just as binding as if

TADASHI HORIE                                                    January 15, 2021
Highly Confidential

Page 26

1    client, Sysmex, regarding either of these two
2    litigations?
3          MR. MALLIN:  Objection, attorney-client
4    communication -- seeks attorney-client communications
5    and work product immunity, mental impressions.
6          I'll instruct the witness not to answer.
7    BY MR. FEIGELSON:
8    Q.   And you're following your attorney's instruction?
9    A.   Yes.
10   Q.   Mr. Horie, have you performed any analysis of the
11   Beckman Coulter patents that's being asserted in the
12   Illinois case?
13         MR. MALLIN:  Objection, seeks
14   attorney-client communication and work product
15   immunity, including mental impressions.
16         I'll instruct the witness not to answer.
17   BY MR. FEIGELSON:
18   Q.   You're not answering?
19   A.   No.
20   Q.   Have you performed any infringement analysis of
21   Beckman Coulter's products?
22         MR. MALLIN:  Objection, seeks
23   attorney-client communication and work product
24   immunity, including mental impressions.
25         I'll instruct the witness not to answer.

Page 27

1    BY MR. FEIGELSON:
2    Q.   You're following your attorney's instruction?
3    A.   Yes.
4    Q.   Prior to the assertion of the Sysmex patents in the
5    present case, did you participate in any pre-suit
6    investigation?
7          MR. MALLIN:  Objection, seeks
8    attorney-client communication and work product
9    immunity, including mental impressions.
10         I'll instruct the witness not to answer.
11   BY MR. FEIGELSON:
12   Q.   You said before you've attended depositions for the
13   Illinois case, is that correct?
14   A.   Yes.
15   Q.   You attended the deposition of Takaaki Nagai, is that
16   right?
17   A.   Yes.
18   Q.   And Daigo Fukuma?
19   A.   Yes.
20   Q.   And Mr. Narisada's deposition you attended, as well?
21   A.   Yes.
22   Q.   And you helped prepare those witnesses in advance of
23   their depositions?
24         MR. MALLIN:  Objection, seeks
25   attorney-client communication and work product

Page 28

1    immunity, mental impressions.
2          I'll instruct the witness not to answer.
3    BY MR. FEIGELSON:
4    Q.   You also attend the deposition of Vijay Madisetti, is
5    that right?
6    A.   Yes.
7    Q.   That was in Georgia, I believe, is that right?
8    A.   Yes.
9    Q.   And you also attended the deposition in Miami of
10   Geraldo Garcia, is that correct?
11   A.   Yes.
12   Q.   And you attended the Markman hearing in the Illinois
13   case via Zoom, is that right?
14   A.   So again, what's the definition of "attending"?
15   Q.   You were in the room.
16   A.   Doing nothing.
17   Q.   Correct.
18   A.   Yeah, right, yeah.
19   Q.   And also the Markman hearing in the Delaware case?
20         MR. MALLIN:  Objection, form.
21   A.   Yes, doing nothing.
22   BY MR. FEIGELSON:
23   Q.   Well, you listened, correct?
24   A.   Listening, yes.
25   Q.   Did you help your team prepare for those hearings?

Page 29

1          MR. MALLIN:  Objection, seeks
2    attorney-client communication, work product immunity.
3          I'll instruct the witness not to answer.
4    BY MR. FEIGELSON:
5    Q.   Did you assist in the invalidity analysis or
6    preparation of invalidity contentions in the Illinois
7    case?
8          MR. MALLIN:  Objection, form.  Objection,
9    foundation.  Objection, seeks attorney-client
10   communications and work product immunity.
11         I'll instruct the witness not to answer.
12   BY MR. FEIGELSON:
13   Q.   You're following that instruction?
14   A.   Yes.
15   Q.   Did you assist in the infringement analysis or the
16   preparation of infringement contentions in the
17   Delaware case?
18         MR. MALLIN:  Objection, form.  Objection,
19   foundation.  Objection, seeks attorney-client
20   communications and work product immunity.
21         I'll instruct the witness not to answer.
22   BY MR. FEIGELSON:
23   Q.   You're following that instruction?
24   A.   Yes.
25   Q.   Have you inspected any Sysmex computer source code in

TADASHI HORIE                                        January 15, 2021
Highly Confidential

Page 30

1  relation to either the Illinois case or the Delaware
2  case?
3              MR. MALLIN:  Hold on one second.
4              Objection, attorney-client communication,
5  work product immunity.
6              I'll instruct the witness not to answer.
7  BY MR. FEIGELSON:
8  Q.  And you're following that instruction?
9  A.  Yes.
10 Q.  Have you inspected any Beckman Coulter computer source
11     code for either the Delaware case or the Illinois
12     case?
13             MR. MALLIN:  Objection, attorney-client
14 communication, work product immunity.
15             I'll instruct the witness not to answer.
16 BY MR. FEIGELSON:
17 Q.  Mr. Horie, have you received emails related to this
18     litigation from opposing counsel?
19 A.  I don't remember.
20 Q.  Are you part of a distribution list for the, for the
21     Beckman Coulter-Sysmex litigations?
22             MR. MALLIN:  Objection, seeks
23 attorney-client communication and attorney work
24 product.
25             I'll instruct the witness not to answer.

Page 31

1              MR. FEIGELSON:  Travis, let's introduce
2  DDX-A.  You can move that over.
3              VIDEO TECHNICIAN:  All right, I'm moving it
4  now, and do you want me to rename it with the new
5  exhibit number?
6              MR. FEIGELSON:  Yes, please.
7              VIDEO TECHNICIAN:  Okay.
8              MR. MALLIN:  Would you let us know when
9  it's in there?
10             VIDEO TECHNICIAN:  It's in there.
11             MR. FEIGELSON:  Travis, can you put that
12 on -- there you go, thank you.
13             MARKED FOR IDENTIFICATION:
14             DEPOSITION EXHIBIT DDX-0026
15             10:09 a.m.
16             (Remotely introduced and provided
17             electronically to the reporter)
18 BY MR. FEIGELSON:
19 Q.  So that's being labeled now as DDX-0026, and it's an
20     email from Nicole Kopinski.  Do you see that,
21     Mr. Horie?
22             MR. MALLIN:  Could you hold on?  I'm having
23 trouble with my Box account here a second, hold on.
24             Okay, I've got it working now fine.  Thank
25 you.

Page 32

1  BY MR. FEIGELSON:
2  Q.  Mr. Horie, do you see the exhibit, DDX-0026?
3  A.  Yeah, I'm still reading it, sorry.  It's a very long
4  email chain.
5  Q.  Do you see your name on it as a recipient?
6  A.  My name?
7  Q.  Is your name there on the "To" line?
8  A.  Which page?
9  Q.  It's on the first page at the top, it says it's from
10     Nicole Kopinski.  Do you see that?
11 A.  First page, yes.
12 Q.  And it was sent Wednesday, August 5th, 2020?
13 A.  Yes.
14 Q.  At 4:49 in the morning, as Nicole sometimes does.  Do
15     you see that?
16 A.  Yes.
17 Q.  And then there's a "To" line.  Do you see the "To"
18     line?
19 A.  Mmm-hmm.
20 Q.  Is your name listed on the "To" line?
21 A.  No, I don't see my name.
22 Q.  Right.  The names that are there are Andrea
23     Shoffstall, right, she was an attorney at Brinks, is
24     that correct?
25 A.  She was, yes.

Page 33

1  Q.  And then there's a BGLSysmex012Team.  Do you see that?
2  A.  I can see that, yes.
3  Q.  And there's Kelly Farnan.  Do you know who Kelly
4      Farnan is?
5  A.  I think she's a local counsel.
6  Q.  In Delaware?
7  A.  Yes, I believe so.
8  Q.  And Renee Mosley Delcollo, do you know who she is?
9  A.  I don't know her.
10 Q.  But your name is not on the "To" line, correct?
11 A.  I don't see my name.
12 Q.  And it's also not on the "CC" line, correct?
13 A.  I don't see my name here, the "CC" line.
14 Q.  Does it appear that Ms. Kopinski intended for you to
15     receive this email?
16             MR. MALLIN:  Objection, calls for
17 speculation, calls for work product and mental
18 impressions.  If you --
19             I'll instruct the witness not to answer to
20 the extent it seeks work product immunity and/or
21 attorney-client communication, and it seeks
22 speculation.
23             So you can answer if you don't provide work
24 product immunity or attorney-client communication.
25 A.  I don't know, I don't recall.

TADASHI HORIE                                          January 15, 2021
Highly Confidential

Page 50

1    as this patent?
2              MR. MALLIN:  Same objection,
3    attorney-client communication, work product immunity,
4    and I'm going to instruct the witness not to answer.
5    BY MR. FEIGELSON:
6    Q.   And you're following that instruction?
7    A.   Yes.
8    Q.   Mr. Horie, in the past two years, how many different
9    Sysmex patent applications have you prosecuted?
10             MR. MALLIN:  One second here.
11             Objection, attorney-client communication,
12   and to the extent it also seeks work product immunity,
13   I'm going to instruct the witness not to answer.
14   BY MR. FEIGELSON:
15   Q.   How about in the past six months, Mr. Horie, how many
16   Sysmex patent applications have you prosecuted?  Is it
17   more than ten?
18             MR. MALLIN:  Objection, attorney-client
19   communication, and to the extent it seeks work product
20   immunity, I'm going to instruct the witness not to
21   answer.
22             MR. FEIGELSON:  Travis, can we put up
23   DDX-C, as in cat?
24
25

Page 51

1              MARKED FOR IDENTIFICATION:
2              DEPOSITION EXHIBIT DDX-0028
3              10:43 a.m.
4              (Remotely introduced and provided
5              electronically to the reporter)
6              MR. MALLIN:  Which exhibit are we looking
7    at now?
8              MR. FEIGELSON:  DDX-0028.
9              MR. MALLIN:  Okay.  Is it just one page?
10             MR. FEIGELSON:  It's a single page.
11   BY MR. FEIGELSON:
12   Q.   Mr. Horie, do you have that in front of you, DDX-0028?
13   A.   Yes.
14   Q.   And this is the first page of a published patent
15   application for Sysmex Corporation for a blood
16   analyzing method, blood analyzer, calibrator set, and
17   calibrator set manufacturing method, correct?
18   A.   Are you reading the title?
19   Q.   Yes.
20   A.   Yeah.  The title says that, yes.
21   Q.   And, in fact, Mr. Horie, do you recall filing an
22   information disclosure statement in February of last
23   year with respect to this application?
24   A.   I don't recall.
25             MR. FEIGELSON:  Let's go to Exhibit K,

Page 52

1    Travis.
2              MARKED FOR IDENTIFICATION:
3              DEPOSITION EXHIBIT DDX-0029
4              10:44 a.m.
5              (Remotely introduced and provided
6              electronically to the reporter)
7    BY MR. FEIGELSON:
8    Q.   And this is DDX-0029.  It's a US published patent
9    application, publication number US 2019/0285520,
10   entitled "Sample Processing Method, Sample Processing
11   Chip and Sample Processing Apparatus."
12             Is that the document you have in front of
13   you, Mr. Horie?
14   A.   Yes.
15             MR. MALLIN:  Only one page, correct?
16             MR. FEIGELSON:  This is the front page of
17   that patent application, that is correct.
18   BY MR. FEIGELSON:
19   Q.   And the applicant is Sysmex Corporation, right?
20   A.   Yes.
21   Q.   Do you recall filing an information disclosure
22   statement for this application less than a month ago,
23   on December 23rd of 2020?
24   A.   I don't recall, sorry.
25   Q.   It was about three weeks ago.  You don't recall?  Four

Page 53

1    weeks ago.
2    A.   You know, I've been fighting --
3              MR. MALLIN:  Just answer the question,
4    okay?
5    A.   No, I don't recall, sorry.
6    BY MR. FEIGELSON:
7    Q.   How did you obtain references for the, that were
8    identified in information disclosure statements for
9    Exhibits 29 and 28?
10             MR. MALLIN:  Objection, foundation.
11   Objection, calls for attorney-client communication.
12             I'll instruct the witness not to answer.
13   BY MR. FEIGELSON:
14   Q.   Do you do your own searching for prior arts references
15   to submit information disclosure statements,
16   Mr. Horie?
17             MR. MALLIN:  Hold on one second.
18             Objection to the extent it seeks
19   attorney-client communication and work product
20   immunity, including mental impression.
21             I'll instruct the witness not to answer.
22   BY MR. FEIGELSON:
23   Q.   You're following that instruction?
24   A.   Yes.
25   Q.   Mr. Horie, I can't remember your answer previously.  I

TADASHI HORIE                                        January 15, 2021
Highly Confidential

Page 54

1    believe I asked you if you had viewed any Beckman
2    Coulter source code in the Illinois case or the
3    Delaware case.  If I haven't asked that question
4    before, I'm asking it now.
5              Have you viewed any Beckman Coulter source
6    code, computer source code in the Illinois case or the
7    Delaware case?
8              MR. MALLIN:  Hold on one moment.
9              MR. FEIGELSON:  I'm sorry, are we waiting
10   on an answer?
11             COURT REPORTER:  Yes.
12             MR. MALLIN:  One moment, guys, one moment.
13             I'm going to object to that question to the
14   extent it seeks attorney-client communication, work
15   product immunity, and I'm going to instruct the
16   witness not to answer.
17   BY MR. FEIGELSON:
18   Q.   And you're following that instruction, Mr. Horie?
19   A.   Yes.
20   Q.   You attempted to view Beckman Coulter source code,
21   isn't that correct?
22             MR. MALLIN:  Objection, form, foundation.
23   BY MR. FEIGELSON:
24   Q.   You can answer.
25   A.   Sorry, what was the question?

Page 55

1    Q.   Did you attempt to view Beckman Coulter source code?
2    A.   You mean attempt?
3    Q.   Yes.  Did you make an effort to view Beckman Coulter
4    source code in this litigation?
5              MR. MALLIN:  Objection to the extent it
6    calls for attorney-client communication and work
7    product immunity.
8              I'll instruct the witness not to answer.
9    BY MR. FEIGELSON:
10   Q.   And you're following that instruction?
11   A.   Yes.
12             MR. FEIGELSON:  Let's put up Exhibit M,
13   please, as in Mary.
14             MR. MALLIN:  Aaron, could we take a break
15   before we get into this exhibit, please?
16             MR. FEIGELSON:  The exhibit is already up.
17             MR. MALLIN:  I don't see it.
18             THE WITNESS:  I don't see it, either.
19             MR. MALLIN:  It's not in my folder yet.
20             MR. FEIGELSON:  All right, we can take a
21   break.
22             MR. MALLIN:  Okay, thanks.
23             VIDEO TECHNICIAN:  Going off the video
24   record.  The time is now 1550 UTC.
25

Page 56

1              (Off the record at 10:50 a.m.)
2              (Back on the record at 11:09 a.m.)
3              VIDEO TECHNICIAN:  Back on the video
4    record.  The time is now 1609 UTC.
5              Go ahead.
6    BY MR. FEIGELSON:
7    Q.   Okay, before the break, Mr. Horie -- well, you know,
8    did you talk with counsel during this past break, in
9    the last fifteen minutes?
10   A.   No.
11   Q.   You didn't speak with counsel on your break?
12   A.   No.
13   Q.   What did you do in the last fifteen minutes during
14   your break?
15   A.   I went to the bathroom, and walking around because of
16   my back issue.
17   Q.   Okay.  You didn't have any conversation with counsel?
18   A.   No.
19   Q.   Okay, great.  Before the break I had asked Travis to
20   put up Exhibit M, and I think he's probably working on
21   that, but before that goes up, let me ask you,
22   Mr. Horie, do you recall making plans to accompany
23   Sysmex's expert to inspect Beckman Coulter's source
24   code in October of 2020?
25   A.   Sorry, could you repeat that question again?  Sorry, I

Page 57

1    apologize.
2    Q.   Yeah.  You're aware that in the litigation between
3    Beckman Coulter and Sysmex, this case, that Sysmex's
4    expert had plans to inspect Beckman Coulter's source
5    code in October and that you were planning to
6    accompany him on that inspection?  Do you recall that?
7              MR. MALLIN:  Objection, foundation, and
8    form.
9    BY MR. FEIGELSON:
10   Q.   You can answer the question.
11   A.   Mmm-hmm, yeah-yeah.  Somebody told me that, yes.  Yes,
12   yeah.
13   Q.   Okay.  And those plans were canceled and you wound up
14   not accompanying the expert to inspect the Beckman
15   Coulter source code, is that right?
16   A.   Yeah.  That's true, yes.
17   Q.   Do you know why the plans were canceled?
18   A.   No.  My answer is no.
19   Q.   You don't know?  All right.
20             MR. FEIGELSON:  Let's bring up Exhibit M,
21   Travis.
22             MARKED FOR IDENTIFICATION:
23             DEPOSITION EXHIBIT DDX-0030
24             11:12 a.m.
25             (Remotely introduced and provided

TADASHI HORIE                                               January 15, 2021
Highly Confidential

---

Page 58

1           electronically to the reporter)
2    BY MR. FEIGELSON:
3    Q.   So, Mr. Horie, while he's putting that up, you have no
4         reason to think you shouldn't have been able to
5         accompany Mr. Satish for the inspection of Beckman
6         Coulter source code, is that correct?
7              MR. MALLIN:  Objection to the extent it
8         calls for attorney-client communication and work
9         product immunity.
10             I'll instruct the witness not to answer.
11   BY MR. FEIGELSON:
12   Q.   And you're following that instruction?
13   A.   Yes.
14   Q.   And so what we're looking at now is Exhibit 30,
15        DDX-0030, and it appears to be an email chain.  The
16        most recent email at the top of the chain is from
17        Joshua James.  Do you see that?
18   A.   Hold on, please, sorry.  My exhibit screen is not
19        refreshing again.
20             MR. MALLIN:  Could you hold on for one
21        second, guys?  One moment.
22             Sorry.  Sorry about that.  Go ahead.
23             THE WITNESS:  Travis, I'm not seeing the
24        exhibit.
25             VIDEO TECHNICIAN:  It's Exhibit 30.

---

Page 59

1              THE WITNESS:  Oh, Exhibit 30, okay, sorry.
2    BY MR. FEIGELSON:
3    Q.   Are you looking at that now, Mr. Horie?
4    A.   It's downloading.  Yes, yes.
5    Q.   Okay.  And it appears to be an email.  The top chain
6         and the first email on page 1 is from Joshua James.
7         Do you see that?
8    A.   My name is here, yes.
9    Q.   Well, where do you see your name?
10   A.   Tadashi.
11   Q.   And that's in the content -- the subject -- the
12        content of the email, right?
13   A.   Yeah.
14   Q.   And what is that?  Can you read what Josh wrote in
15        this email out loud?
16   A.   You want me to read?
17   Q.   Yeah, can you read that, please?
18   A.   The top of the email?
19   Q.   It's okay, I want to make sure you're reading that.
20        Do you see that?
21   A.   Yup.
22   Q.   Okay, and Josh James is saying here on October 28th,
23        he's writing to Aaron Feigelson, which is me, and he
24        says:  Aaron, due to your objection, Tadashi will not
25        accompany Mr. Satish tomorrow.  I will accompany

---

Page 60

1         Mr. Satish instead.  Regards, Josh.
2              Correct, that's what it says?
3    A.   That's what it says, yes.
4    Q.   Were you planning to accompany Mr. Satish for a source
5         code inspection?
6    A.   It's a long email chain.
7    Q.   I can direct your attention to the -- if you go to
8         page, the bottom of page 2?
9    A.   Bottom of page 2.
10   Q.   I'm sorry, it's the bottom of page 1, going on to the
11        top of page 2.
12   A.   Bottom of the email dated October 27th --
13   Q.   Yeah.
14   A.   -- 4:27 p.m.?
15   Q.   Just, you can look at this, yeah.  At the bottom of
16        page 2 Josh James wrote that:  Tadashi Horie from
17        Brinks Gilson & Lione will be accompanying Mr. Satish,
18        so please add him to your security list.
19             Do you see that those are the last lines on
20        page 2?
21   A.   Sorry, I like to confirm this is the right email.  It
22        says the date is October 27th, 2020, at 4:27 p.m.  Is
23        that the email that you are referring to?
24   Q.   Yes, it is.
25   A.   Okay, okay.

---

Page 61

1    Q.   And the last lines of that email at the bottom of
2         page 2, Josh James writes that you were planning to
3         accompany Mr. Satish on the source code inspection.
4         Is that your understanding?
5    A.   That's what it says, yes.
6    Q.   Do you recall planning to accompany Mr. Satish on a
7         source code inspection?
8    A.   Yeah, I recall somebody told me to go.
9    Q.   And you thought that that would be okay for you to do?
10             MR. MALLIN:  Objection, attorney-client
11        communication, work product immunity.
12             I'll instruct the witness not to answer.
13   BY MR. FEIGELSON:
14   Q.   You're following that instruction?
15   A.   Yes.
16   Q.   At that time you didn't have any issue with going to
17        view Beckman Coulter source code with Mr. Satish, is
18        that right?
19             MR. MALLIN:  Objection, calls for
20        attorney-client communication, work product immunity.
21             I'll instruct the -- including mental
22        impressions.  I'll instruct the witness not to answer.
23   BY MR. FEIGELSON:
24   Q.   But on October 28th and after, you were still
25        prosecuting patent applications for Sysmex, isn't that

---

Page 62

1    right?
2              MR. MALLIN:  Objection, calls for
3    attorney-client communication, work product immunity,
4    vague.
5              I'll instruct the witness not to answer.
6    BY MR. FEIGELSON:
7    Q.   You're following counsel's instruction?
8    A.   Yes.
9    Q.   Mr. Horie, have you viewed any hard copy source code
10   of Beckman Coulter for this litigation?
11             MR. MALLIN:  Hold on one second.
12             Objection to the extent it calls for
13   attorney-client communication and work product
14   immunity, including mental impressions.
15             I'll instruct the witness not to answer.
16   BY MR. FEIGELSON:
17   Q.   You're following that instruction, Mr. Horie?
18   A.   Yes.
19   Q.   Okay.
20             MR. FEIGELSON:  Travis, can you put up
21   Exhibit P, as in Paul.
22             MARKED FOR IDENTIFICATION:
23             DEPOSITION EXHIBIT DDX-0031
24             11:19 a.m.
25             (Remotely introduced and provided

Page 63

1    electronically to the reporter)
2              MR. FEIGELSON:  As he's putting it up, this
3    will be DDX-0031, and it is a US patent number
4    10,151,746.
5    BY MR. FEIGELSON:
6    Q.   Are you looking at that now, Mr. Horie?
7    A.   The patent number is 10,151,746.
8    Q.   Yes.  Do you recognize this patent?
9    A.   Do you want me to read through this?
10   Q.   I'm asking if you recognize it just from the front
11   page.
12   A.   I'd like to see all of the, all of the pages.
13   Q.   Looking at the front page, you don't recognize this
14   patent?
15   A.   Before I answer your question, I'd like to review all
16   of the pages and the drawings.
17   Q.   I understand.  My question is that you're not able to
18   do that just by looking at the front page, is that
19   your testimony?
20             MR. MALLIN:  He just said he wants to
21   review the document.  So why don't you give him the
22   opportunity, Aaron, and provide that professional
23   courtesy instead of badgering the witness, okay?
24   BY MR. FEIGELSON:
25   Q.   I'm just asking if you recognize it from the front

Page 64

1    page.  That's a yes-or-no question.
2    A.   Before I answer the question, I'd like to review all
3    of the pages and the drawings.
4    Q.   Okay.  How long do you need to do that, Mr. Horie?
5    A.   Let me try.  I will make it short.
6    Q.   Okay, I don't want to rush you, I just want to know
7    how long you need.
8    A.   All right, okay, let me try.
9              Yeah, the drawings, the drawings look
10   familiar to me, yes.
11   Q.   The drawings look familiar to you?
12   A.   Yes.
13   Q.   But other than the drawings, you don't have a
14   recollection of this 746 patent?
15   A.   Some of the text, yes, they are familiar to me.
16   Q.   Mr. Horie, are you aware that this patent was asserted
17   by Sysmex against Beckman Coulter in 2018, in
18   December?
19             THE WITNESS:  Is this the one?
20             MR. MALLIN:  If you're aware or not.
21             THE WITNESS:  Oh, okay.
22             MR. MALLIN:  Do you know or not.
23   A.   Yeah, I have to take a look at my note.
24   BY MR. FEIGELSON:
25   Q.   Okay.

Page 65

1    A.   At this moment, I can't answer your question because I
2    don't remember.
3    Q.   Okay.  Did you prosecute this patent application,
4    Mr. Horie?
5    A.   I'd like to see my prosecution papers.
6    Q.   You don't know, as you sit here, whether you
7    prosecuted this patent?
8    A.   I think I prosecuted this application, because --
9    that's it, sorry.
10   Q.   Okay.  If you notice on the front page, this
11   application claims to be a continuation of another
12   patent, patent number 9,933,414.  Do you see that on
13   the front page?
14   A.   That's line 63, right?
15   Q.   Correct.
16   A.   Okay, yes, yeah.
17   Q.   Did you prosecute that patent, 9,933,414, do you know?
18   A.   I don't remember.
19   Q.   And, in fact, if you were to turn the page, you would
20   see that there are other patent applications in this
21   chain going back to 2008.
22             Did you prosecute any of those patent
23   applications that are further up in the chain?
24             MR. MALLIN:  Objection, form.
25

# EXHIBIT P

# Redacted in its Entirety

# EXHIBIT Q

# Redacted in its Entirety

# EXHIBIT R

# Redacted in its Entirety

# EXHIBIT S

# Redacted in its Entirety

# EXHIBIT T

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SYSMEX CORPORATION, et al., )
                            )
            Plaintiffs,     )
                            ) C.A. No. 19-1642(RGA)(CJB)
     v.                     )
                            )
BECKMAN COULTER, INC.,      )
                            )
            Defendant.      )

Tuesday, January 7, 2020
11:00 a.m.
Teleconference

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States District Court Magistrate Judge

APPEARANCES:

         RICHARDS LAYTON & FINGER, PA
         BY:  KELLY E. FARNAN, ESQ.

         -and-

         BRINKS GILSON & LIONE
         BY:  JAMES R. SOBIERAJ, ESQ.

                Counsel for the Plaintiffs

---

2

1   APPEARANCES CONTINUED:

2

3

4       YOUNG CONAWAY STARGATT & TAYLOR
        BY:  MELANIE K. SHARP, ESQ.

5       -and-

6       LEYDIG VOIT & MAYER, LTD
        BY:  WESLEY O. MUELLER, ESQ.

7       BY:  AARON R. FEIGELSON, ESQ.

8           Counsel for the Defendant

9

10

11          - oOo -

12      P R O C E E D I N G S

13      (REPORTER'S NOTE:  The following telephone

14  conference was held in chambers, beginning at 11:00 a.m.)

15

16

17      THE COURT:  Good morning, everyone.  It's Judge

18  Burke here.  Before I begin let me just say a few things for

19  the record.  The first is that we're here this morning for a

20  telephonic case management conference in the matter of

21  Sysmex Corp., et al. versus Beckman Coulter, Inc.  It's

22  Civil Action Number 19-1642-RGA-CJB here in our court.  And

23  because we are here on the record for our teleconference, I

24  have with me a court reporter, Mr. Hawkins, from our court

25  who will be taking down our call today.  I would just ask

---

3

1   counsel if they would try to remember to identify themselves

2   each time they speak so that our court reporter can get a

3   good and accurate record of our call this morning.

4       Before we go further, let's have counsel for

5   each side identify themselves for the record.  We'll start

6   first with counsel for the plaintiff's side, and we'll begin

7   there with Delaware counsel.

8       MS. FARNAN:  Good morning, Your Honor.  This is

9   Kelly Farnan from Richards, Layton & Finger on behalf of the

10  plaintiff.  And I'm joined by Jim Sobieraj from Brinks

11  Gilson.

12      MR. SOBIERAJ:  Good morning, Your Honor.

13      THE COURT:  Good morning to you both.

14      We'll do the same for counsel for the

15  defendant's side, and again beginning with the Delaware

16  counsel.

17      MS. SHARP:  Good morning, Your Honor.  Melanie

18  Sharp from Young, Conaway on behalf of the defendants.  With

19  me is Stephen Lee in our firm.  Hopefully he'll be admitted

20  I think nine days from now in District Court.  Also on the

21  line is Aaron Feigelson and Wesley Mueller from the Leydig

22  firm.

23      THE COURT:  Okay.

24      MR. MUELLER:  Good morning, Your Honor.

25      THE COURT:  Good morning to you all.  And

---

4

1   particularly good to welcome Mr. Lee to our bar.

2       So everyone as we begin our case management

3   conference today, let me just say a couple of things by way

4   of process and then we'll delve into the substance of the

5   parties' helpful letter that they sent in late December to

6   me.

7       So first, I'll just cover just briefly and

8   review my role in the case.  As the parties know I have been

9   referred the case by the District Court to handle all issues

10  and motions up through case dispositive motions, so I'll do

11  that in the first instance.  I also in these case management

12  conferences like to not only direct the parties to my

13  portion of the Court's website which has additional

14  information and orders relevant to my court on it, but also

15  because there the parties I always like to let them know

16  they will find a standing order that I have entered a couple

17  of years ago which relates to providing opportunities for

18  newer attorneys, that is attorneys who are seven years or

19  less out of law school, the opportunity to make argument

20  with regard to motions as to which oral argument has been

21  requested that are in front of me.  And basically the

22  standing order simply provides some incentives for parties

23  to have newer attorneys who worked on those motions argue

24  them.  For example, it says that if I'm told that a newer

25  attorney is going to argue a motion before me, I'll almost

---

**5**

11:07:06  1    certainly decide then to grant oral argument and will
11:07:09  2    consider doing things like allocating more time than they
11:07:13  3    otherwise would have for the argument on the motion.  So I
11:07:16  4    just commend the parties particularly to that particular
11:07:18  5    standing order.  Again, it's on my portion of the District
11:07:21  6    Court's website.
11:07:23  7         Next let me talk a little bit about process in
11:07:26  8    terms of getting a scheduling order up and running.  We'll
11:07:29  9    hear some arrangement on today's call about some of the
11:07:32  10   disputed issues that the parties still have with regard to
11:07:35  11   the schedule, then I'll make a decision on our call today.
11:07:37  12   And what I'll do is I'll ask the plaintiff's counsel on
11:07:40  13   behalf of all parties to file a revised proposed scheduling
11:07:45  14   order that incorporates the decisions I've made and to do so
11:07:49  15   by no later than close of business on Friday this week.
11:07:53  16   That may require the parties to further meet and confer a
11:07:58  17   bit, but I'll ask that a revised proposed schedule be filed
11:08:01  18   by no later than the end of the week.
11:08:03  19        All right.  With all that said, I know the
11:08:06  20   parties had some disputes with regard to the schedule.  Let
11:08:11  21   me first try to break down what I think are kind of the big
11:08:17  22   buckets of dispute and make sure I have that correct before
11:08:20  23   I tell you how we'll go about resolving the issues.
11:08:24  24        It seemed to me that there were kind of at least
11:08:27  25   three kind of significant buckets of disputes.  The first is

**6**

11:08:31  1    really just date related.  The parties had a lot of disputes
11:08:34  2    about dates which is really a larger dispute about how fast
11:08:38  3    should we get to trial here, so that was kind of bucket
11:08:41  4    number one.  My inclination there is to hear some argument
11:08:46  5    about why it is that the plaintiff's schedule or the
11:08:48  6    defendant's schedule to trial makes more sense to each side,
11:08:52  7    and then ultimately to make a decision today where I provide
11:08:55  8    you with some key dates, that is the dates for the trial,
11:08:58  9    the pretrial conference, the dates for hearing on case
11:09:01  10   dispositive motions and the date for claim construction
11:09:04  11   hearing.  And then ask the parties to go back in light of my
11:09:07  12   decisions on those dates and just craft a schedule that
11:09:11  13   flows from those dates which hopefully won't be one where
11:09:14  14   there is any further dispute.
11:09:15  15        Next the parties had disputes about the case
11:09:18  16   narrowing process.  And then thirdly there were some
11:09:21  17   disputes about how depositions should be handled in the
11:09:26  18   case, all of which the parties had talked about in their
11:09:29  19   letter.
11:09:29  20        It seems like those were the three big buckets
11:09:32  21   of issues.
11:09:32  22        I'll turn first to plaintiff's counsel to let me
11:09:34  23   know if they think I have missed anything that I would
11:09:38  24   particularly need to decide here on our call today.
11:09:43  25        MR. SOBIERAJ:  James Sobieraj for the plaintiff,

**7**

11:09:46  1    Your Honor.  No, I think those are the key issues.
11:09:48  2         THE COURT:  Okay.  And on defendant's side?
11:09:50  3         MR. MUELLER:  Your Honor, Wes Mueller.  I
11:09:55  4    believe those are the key issues with perhaps some other
11:09:58  5    issues interrelated with those.
11:10:01  6         THE COURT:  Okay.  Well, I'll kind of take them
11:10:04  7    up in those -- we'll address those three buckets.  And
11:10:07  8    certainly, Mr. Mueller, if you think there are kind of
11:10:10  9    related issues that we need to delve into as we do, just let
11:10:14  10   me know.
11:10:14  11        I will say as to those three buckets, one of
11:10:17  12   them that I won't be getting into in our call today because
11:10:20  13   I'm going to provide you with some more guidance is on the
11:10:24  14   issue of case narrowing.  Basically when parties, as the
11:10:27  15   parties here have, have disputes about whether there should
11:10:30  16   be a formal case narrowing order as it relates to asserted
11:10:35  17   claims or invalidity positions, I have an additional order
11:10:41  18   that I'll issue in the case that will provide you with some
11:10:44  19   more specific guidance on what I would like the parties to
11:10:47  20   do to really tee that issue up before me in a way that will
11:10:51  21   be most helpful.  In part it will provide you with some
11:10:55  22   guidance as to some other cases in which I have issued
11:10:58  23   opinions with regard to case narrowing.  And I'll ask you
11:11:01  24   for more specific arguments about whether we should narrow
11:11:05  25   the case at all by way of court order and if so, whether

**8**

11:11:08  1    there should be one cut down stage or two.  And I'll provide
11:11:12  2    you with some additional related guidance.
11:11:15  3         So I don't plan to address the case narrowing
11:11:17  4    issue substantially on our call today, but I'll issue a
11:11:22  5    short order after our call that will ask the parties to
11:11:24  6    provide me with some additional information and then I'll
11:11:28  7    resolve the issue after I get that information.
11:11:31  8         With that let me start first with the issue of
11:11:33  9    the case schedule.  And basically as the parties have
11:11:36  10   helpfully set out in the timeline that's attached to Exhibit
11:11:39  11   A in the beginning, the plaintiff is asking for a schedule
11:11:42  12   that would get us to trial in November of 2021 and the
11:11:46  13   defendant's side thinks that the trial should not occur
11:11:50  14   until April of 2022.  You talked a little bit about why in
11:11:54  15   your respective letters.  Let me give each side an
11:11:57  16   opportunity to add anything they would like to add to the
11:12:00  17   record in those respects.  I'll turn first to counsel for
11:12:03  18   plaintiff's side.  Who is going to speak on behalf of the
11:12:06  19   plaintiff here?
11:12:07  20        MR. SOBIERAJ:  Jim Sobieraj, Your Honor.
11:12:10  21        THE COURT:  Mr. Sobieraj, I certainly heard your
11:12:13  22   arguments with regard to why you think some of the
11:12:16  23   efficiencies that could be gained in light of the fact that
11:12:19  24   the Illinois litigation means that this case should kind of
11:12:23  25   go on a relatively typical schedule.  And obviously the

9

11:12:27  1   other side has pointed to some of the complications that can
11:12:32  2   come along with litigation involving Japanese corporations
11:12:37  3   and entities.  And I wanted to get your take on why it is
11:12:42  4   that those kinds of complications when you factor them in
11:12:47  5   even in light of the efficiency gains from the Illinois case
11:12:51  6   don't suggest that maybe a little bit more time is needed
11:12:54  7   than normal.
11:12:55  8       MR. SOBIERAJ:  Sure, Your Honor.  We filed this
11:12:57  9   case in September, early September of 2019.  And we're
11:13:00  10  proposing a trial in November of 2021 which is a 26-month
11:13:06  11  schedule which based on my experience in Delaware is pretty
11:13:10  12  typical.  And I don't really think that the presence of the
11:13:15  13  Japanese corporations presents any exceptional circumstances
11:13:19  14  that merits additional time, particularly with the
11:13:24  15  efficiencies we've already gained because a lot of discovery
11:13:29  16  in the Illinois case is going to be used here.
11:13:31  17       I expect the document production in this case is
11:13:34  18  going to be less than what we already produced in the
11:13:37  19  Illinois case, so the parties have already been dealing with
11:13:40  20  and resolving working with machine translations and other
11:13:44  21  ways to deal with the issues relating to the Japanese
11:13:49  22  defendants.
11:13:49  23       The other thing, a couple other points I can
11:13:53  24  make that there are some things that have developed since we
11:13:56  25  sent our letter.  In our schedule we proposed that the

10

11:14:00  1   plaintiffs identify the accused products in the patents by
11:14:05  2   Monday, December 30th.  And we did that.  We went ahead and
11:14:08  3   met that deadline.  Also, both parties have already served
11:14:12  4   written discovery, so discovery is underway in this case.
11:14:16  5       I would also like to point out I think there is
11:14:20  6   a few anomalies in the schedule that the defendants have
11:14:24  7   proposed.  So they start adding additional time early on,
11:14:28  8   but for example, they want two additional weeks for the core
11:14:32  9   documents which again, I'm not sure there is anything
11:14:35  10  exceptional that needs an additional two weeks, especially
11:14:40  11  since we already met our deadline of identifying the accused
11:14:45  12  product.
11:14:45  13       But then after production of core products, both
11:14:48  14  sides proposed roughly one month for the plaintiff to
11:14:51  15  produce initial claim charts.  And then we propose an
11:14:56  16  additional thirty days and then thirty days later the
11:14:58  17  defendants would produce their invalidity contentions.  The
11:15:02  18  defendants propose an additional thirty days, so they're
11:15:06  19  proposing thirty days for infringement contentions, but they
11:15:10  20  want sixty days for their invalidity contentions and they
11:15:14  21  want it to go to May 15th.  The other thing that's anomalus
11:15:19  22  about that is they indicated that they plan to file an inter
11:15:25  23  parties' review petition by the end of March, so if they do
11:15:29  24  that, I don't understand why they then need an additional
11:15:32  25  six weeks to serve their invalidity contentions.

11

11:15:35  1   The other thing I think the Court might be
11:15:38  2   interested in knowing is that there is a European
11:15:42  3   counterpart to these patents.  And some time ago, the
11:15:47  4   defendants filed an opposition to basically challenge the
11:15:53  5   invalidity of the claims of the counterpart European
11:15:56  6   application in the European Patent Office.  So they're well
11:16:00  7   familiar with the subject matter and the specification of
11:16:05  8   the patents.  They're familiar with the prior art already
11:16:08  9   based on what they've done in the European Patent Office.
11:16:11  10  The claims may not be identical, but again, it's not like
11:16:16  11  they're starting from scratch.  They have quite a head start
11:16:19  12  already in terms of developing prior art defenses in this
11:16:23  13  case.
11:16:29  14       The other anomaly I noticed in their proposed
11:16:30  15  schedule is when we get to dispositive motions, it has a
11:16:34  16  different starting dates.  But plaintiffs have proposed
11:16:37  17  after dispositive motions are filed usually by the
11:16:40  18  defendants that the other idea would have twenty days to
11:16:43  19  file a responsive brief and fourteen days to file a reply
11:16:47  20  brief.
11:16:48  21       Defendants have proposed that after dispositive
11:16:51  22  motions are filed, the responding party would have only
11:16:55  23  eighteen days for a response, but then the party filing the
11:16:58  24  dispositive motions would have twenty-one days for reply.
11:17:02  25  It doesn't make sense to have any symmetry.  Usually you get

12

11:17:05  1   more time for the responsive brief than the reply brief.
11:17:10  2       So I think that are the additional points that
11:17:11  3   I wanted to make in addition to what we said in our letter.
11:17:14  4       THE COURT:  Certainly I agree with you that the
11:17:16  5   general pace of your schedule roughly, not quite, but almost
11:17:20  6   twenty-four months to trial from today, initial disclosures
11:17:24  7   that are roughly thirty days apart seem more in line with
11:17:28  8   quote unquote the typical patent case schedule in a few
11:17:33  9   patent cases or a case like it, but I guess in terms of the
11:17:38  10  question of should this case be typical or not or do we move
11:17:42  11  more efficiently or will it be less efficient, obviously you
11:17:49  12  have said that you think there is going to be efficiency
11:17:52  13  gains from significant discovery already having been
11:17:55  14  produced in Illinois and being shared here.  Obviously the
11:17:58  15  other side has pointed to the fact that your patents are at
11:18:01  16  issue in this case, there is obviously going to be new
11:18:05  17  inventorship testimony, there is going to be new and
11:18:09  18  different issues at play here, of course, but if you were
11:18:12  19  going to put a finer point on the efficiency argument and
11:18:17  20  say judge, look, as opposed to a typical case that is
11:18:21  21  starting from scratch, this case should move X amount
11:18:25  22  efficiently because we have already largely dealt with
11:18:30  23  production of these sub issues.  What would you say to put a
11:18:34  24  finer point on that?
11:18:35  25       MR. SOBIERAJ:  I would say probably two months

13

11:18:37 1   sooner.  I can give you a little more detail, too, Your

11:18:40 2   Honor.  So the accused products in this case, there has been

11:18:43 3   quite a bit of discovery on them in the Illinois case.  So,

11:18:46 4   for example, in the Illinois case, the plaintiffs are

11:18:48 5   arguing that the accused products in this case are evidence

11:18:51 6   of commercial success of their patents in the Illinois case.

11:18:54 7            THE COURT:  The accused products in this case

11:18:58 8   are said to read on the patents-in-suit in Illinois?

11:19:01 9            MR. SOBIERAJ:  Yeah, that's their position.

11:19:03 10   Their position that the Illinois patents, let's call them

11:19:06 11   the Illinois patents, read on the accused products in this

11:19:09 12   case as evidence of commercial success of the patents in the

11:19:12 13   Illinois case.  So a lot of the information has been

11:19:16 14   produced.  In depositions we have asked questions of some of

11:19:20 15   their witnesses about the accused products.  Now, there is

11:19:23 16   some different functionality at issue here, but there has

11:19:28 17   already been some discovery taken that is useful in this

11:19:32 18   case.  And even though in this case there is four Japanese

11:19:37 19   inventors, three of them were deposed in the Illinois case.

11:19:41 20   Now, different patents, there are some different

11:19:44 21   functionality, but they have already gone through the

11:19:46 22   background questions for all these inventors and found out

11:19:50 23   their employment history, different projects they worked on,

11:19:55 24   so that's ground that doesn't need to be covered again when

11:19:58 25   they're deposed again in this case.

14

11:19:59 1            THE COURT:  Okay.  Let me turn to your colleague

11:20:01 2   on the other side.  Who is going to speak on behalf of the

11:20:04 3   defendant on these issues?

11:20:06 4            MR. MUELLER:  Thank you, Your Honor.  Wes

11:20:08 5   Mueller on behalf of defendants.

11:20:11 6            THE COURT:  Mr. Mueller, let me start with a

11:20:14 7   question for you which is just on the general efficiency

11:20:16 8   points, I think Mr. Sobieraj would say look, at a minimum

11:20:20 9   we're not starting at scratch here.  These are parties well

11:20:23 10   familiar with each other.  There is going to be some amount

11:20:25 11   of discovery that will have happened in the prior case that

11:20:29 12   can be streamlined a bit here.  Obviously there will be

11:20:34 13   differences.  If you factor that in, I think the plaintiff's

11:20:39 14   point would be even if there are additional challenges here

11:20:43 15   because we have some foreign entities and foreign witnesses,

11:20:48 16   it should roughly even out in terms of the typical case

11:20:52 17   schedule.  Obviously you disagree.  I'm happy to hear your

11:20:56 18   view on why that is.

11:20:58 19            MR. MUELLER:  Thank you, Your Honor.

11:20:59 20            So while there is some overlap with respect to

11:21:03 21   the accused products which are BCI hematology analyzers,

11:21:11 22   those documents are all in English and understanding what

11:21:16 23   they mean is straightforward.  On the flip side, the

11:21:24 24   discovery for which we are most interested in which is the

11:21:27 25   development of both the patented product or the development

15

11:21:34 1   that led to the patents-in-suit, and these patents date back

11:21:41 2   more than ten years ago, the technology that was allegedly

11:21:45 3   developed in the 2007, 2008 time frame, that is all in

11:21:51 4   Japanese.  That was all done overseas and the documentation

11:21:56 5   that is difficult at best to get in the first instance

11:22:01 6   because there is always a question as to, or there has been

11:22:05 7   a question at least as it has arisen in the Illinois case as

11:22:10 8   to what the relevant scope of documents might be, but then

11:22:15 9   once the documents are produced to understand what they

11:22:18 10   mean.

11:22:18 11            So in this case, both BCI and Sysmex have

11:22:26 12   developed a hematology analyzer product with multimode

11:22:32 13   detectors as is set forth in their patents which measures

11:22:35 14   both blood and body fluid long before Sysmex applied for

11:22:42 15   these patents-in-suit.  So we know that Sysmex had prior art

11:22:46 16   machines which used both blood and body fluid.  In fact,

11:22:54 17   they had a software application that was used on their prior

11:22:57 18   art machine and we need to know what that is, and we need to

11:23:00 19   understand what that is in order to develop our prior art

11:23:04 20   defense.

11:23:05 21            And so while my friend talks about how we have a

11:23:12 22   good understanding of the prior art with respect to even

11:23:14 23   these patents because there is a European opposition that's

11:23:18 24   going on, we do have an understanding of prior art which is

11:23:23 25   by way of printed publication.  But there is another body of

16

11:23:28 1   prior art that we think is highly relevant in this instance

11:23:33 2   and that is an understanding of how machines which were sold

11:23:37 3   throughout the world by Sysmex which included both blood and

11:23:43 4   body fluid, how they operated.  And that is a lot more

11:23:48 5   detailed into, you know, how the software was executing,

11:23:51 6   what the screen displays looked like, and that's why we

11:23:57 7   proposed some additional time on the front end to not only

11:24:02 8   get the documents in the door, but because from our

11:24:07 9   experience in the Illinois litigation, we fully believe that

11:24:11 10   all these documents will be in Japanese.  It's going to take

11:24:15 11   us additional time to understand what those documents mean.

11:24:19 12            THE COURT:  Okay.  So I guess, Mr. Mueller, if I

11:24:23 13   was summing up what you said, is this correct that you think

11:24:26 14   there will be some substantial number of 102, 103 related

11:24:34 15   docs and other docs in the case that are likely to be

11:24:37 16   produced by plaintiff's side or which you will have to seek

11:24:40 17   that are likely to come from Japan, be in Japanese in terms

11:24:46 18   of their native language, and that is going to create

11:24:50 19   difficulties for you for which you're going to need more

11:24:54 20   than the typical additional time particularly in the early

11:24:58 21   stages of the case: is that right?

11:25:00 22            MR. MUELLER:  That's correct, Your Honor.  And

11:25:03 23   what we've experienced is that just the cultural differences

11:25:09 24   between U.S. corporations which are perhaps more accustomed

11:25:14 25   to discovery disputes in the U.S. and those of Sysmex, in

29

11:44:30 1    use it at trial, so it seems to me it's reasonable and most
11:44:34 2    cost effective for them to provide a translation at the time
11:44:38 3    they're offering the document to show to the witness.
11:44:40 4            THE COURT:  All right.  Anything further besides
11:44:43 5    that issue?
11:44:49 6            MR. SOBIERAJ:  Not from our side.  Thank you.
11:44:51 7            THE COURT:  Mr. Mueller, anything you want to
11:44:53 8    say about the document translation issue?  And also, was
11:44:56 9    there any other issue that we haven't covered that you think
11:44:58 10   I need to decide?
11:45:00 11           MR. MUELLER:  Well, obviously I mean on the
11:45:03 12   document translation issue, if they want a certified copy of
11:45:08 13   documents that we may or may not show a witness prior to the
11:45:13 14   deposition, that's revealing our strategy and work product
11:45:19 15   prior to the deposition.  And if they have a translation, it
11:45:25 16   ought to be going the other way I guess is my point that
11:45:30 17   they've got the ability to understand the documents that
11:45:32 18   they're producing in both English and Japanese, and we would
11:45:38 19   all be on equal footing if the documents were produced to us
11:45:43 20   in the first instance and in English.  They must have a
11:45:47 21   translation in order to know what they're producing.
11:45:50 22           THE COURT:  I was just going to ask,
11:45:52 23   Mr. Mueller, to short circuit it, if you're taking the depo
11:45:56 24   in this case and let's say you are going to ask a witness
11:45:58 25   about a document that's in Japanese, I mean, is your plan to

30

11:46:02 1    ask the witness about the document but to not have or
11:46:09 2    produce a translated copy to the plaintiff or is what you're
11:46:12 3    saying look, if we do that, yeah, I'm sure we're going to
11:46:16 4    have a translation and if we have a translation I'm sure
11:46:19 5    we're going to give it to the other side just out of
11:46:22 6    courtesy, are you saying one or the other or something in
11:46:26 7    between?
11:46:26 8            MR. MUELLER:  What we're saying is if we have a
11:46:28 9    translation, whether it's certified, it may not be
11:46:33 10   certified, but if we have a translation such as a machine
11:46:36 11   translation, we would provide it to the other side.  But if
11:46:42 12   they have a translation, which they must or else it's
11:46:46 13   unclear how they would be producing these documents and how
11:46:49 14   they would understand the relevance of the documents, they
11:46:53 15   ought to be producing translations to us in the first
11:46:57 16   instance.
11:46:57 17           THE COURT:  Okay.  Anything further,
11:47:01 18   Mr. Mueller, in terms of issues that we haven't addressed
11:47:04 19   that I need to make a decision on?
11:47:04 20           MR. MUELLER:  Not that you need to make a
11:47:07 21   decision on.  We do intend as counsel indicated, BCI does
11:47:14 22   intend to file petitions for IPR on these patents.  And
11:47:18 23   there is nothing to act on at this point, but we want to be
11:47:23 24   sure that Your Honor is aware that we intend to go forward
11:47:27 25   with those.

31

11:47:27 1            THE COURT:  And that's helpful because the other
11:47:30 2    issue I sometimes ask is there any other issue about the
11:47:33 3    case that we haven't talked about in terms of the schedule
11:47:37 4    that either side wants to make me aware of.  I appreciate
11:47:41 5    you making me aware of the IPR.  Do you happen to know what
11:47:46 6    the statutory deadline is for filing?
11:47:48 7            MR. MUELLER:  Well, it would be September of
11:47:51 8    2020, but we intend to get it on file much before that.
11:47:57 9            THE COURT:  Okay.  And Mr. Sobieraj, is there
11:48:00 10   anything else along those lines, maybe not to do with the
11:48:03 11   scheduling order itself, but another issue that's unique to
11:48:07 12   the case that you wanted to bring to the Court's attention?
11:48:11 13   Not that there has to be, but if there is, I'm happy to give
11:48:15 14   you the opportunity to mention it.
11:48:15 15           MR. SOBIERAJ:  No, there is not, Your Honor.
11:48:17 16   I'm not inclined to make one up.
11:48:17 17           THE COURT:  Good.  We've gotten into the weeds
11:48:21 18   certainly quite a bit about some other issues here.  Let me
11:48:25 19   go ahead and give you my decisions on the issues that I have
11:48:28 20   written down that the parties have addressed.  What I'll ask
11:48:31 21   is that the parties after I give you my decisions today, that
11:48:38 22   they further meet and confer in an attempt to provide me
11:48:41 23   with a revised proposed scheduling order by no later than
11:48:46 24   close of business on Friday of this week that is free of
11:48:49 25   dispute.  I'm going to address as I said the dispute about

32

11:48:52 1    the dates by providing you with some key dates, and I'm
11:48:59 2    hopeful that that will enable the parties after further
11:49:04 3    meeting and conferring to agree on a schedule that is
11:49:06 4    aligned with those dates and that makes sense, and also
11:49:10 5    address the other disputed issues as I understand them that
11:49:14 6    the parties have raised.
11:49:15 7            First with regard to the general case schedule,
11:49:17 8    after hearing the parties' arguments, I'm going to order
11:49:20 9    that the jury trial in the case begin on a date that is much
11:49:27 10   closer to the plaintiff's proposal here, slightly later than
11:49:31 11   what they were proposing, but closer to their proposal than
11:49:34 12   the defendant's side.  I understand that there may be some
11:49:37 13   greater than normal complications in the case because we are
11:49:41 14   going to have Japanese language documents and Japanese
11:49:46 15   witnesses.  On the other hand it does strike me that in
11:49:51 16   light of the other litigation in Federal Court in Illinois
11:49:55 17   that there really should be efficiencies that should be
11:50:00 18   gained in this case that you wouldn't have in a typical
11:50:02 19   patent case as well.  And it's not clear to me sitting here
11:50:05 20   today that they won't in essence shake out evenly in the
11:50:10 21   end, if they might provide some additional hurdles for
11:50:12 22   defendants in the earlier part of the case.  I think we can
11:50:17 23   get to trial roughly two years from today's date as we would
11:50:19 24   in a two patent case in our district when you kind of equal
11:50:24 25   out those respective difficulties and efficiencies.  I'm