

**WILMINGTON**
RODNEY SQUARE

**Melanie K. Sharp**
P 302.571.6681
F 302.576.3333
msharp@ycst.com

**BY E-FILE**

The Honorable Christopher J. Burke
United States District Court of Delaware
844 North King Street
Wilmington, DE 19801

October 14, 2021

███████████████████

**REDACTED - PUBLIC VERSION**

Re: *Sysmex Corp. & Sysmex America, Inc. v. Beckman Coulter, Inc.* No. 1:19-cv-01642-RGA-CJB

Dear Judge Burke:

I write on behalf of my client, BCI, requesting the Court's assistance in determining the proper scope of additional discovery necessitated by the belated disclosure of Sysmex's technical expert, Dr. Vijay Madisetti, and the eight-month delayed deposition testimony of Sysmex's named inventor, Mr. Masanori Imazu.

At the August 3, 2021 hearing on BCI's motion to strike, after Sysmex agreed to have Dr. Madisetti produce a supplemental report regarding the XE-5000 analyzer, the Court specifically instructed the parties to confer regarding any necessary additional follow-on discovery. (Ex. A, Hrg. at 43:17–22). However, at an hour-long meet and confer on August 17, Sysmex refused to provide a date certain by which it would serve Dr. Madisetti's supplemental report, and declined to discuss the scope of any subsequent discovery, claiming it could not do so until after service of that report. Just three business days later, Sysmex served its report, and on August 23, Sysmex offered Dr. Madisetti only for a two hour deposition, restricted to the issue of whether the XE-5000 is covered by the claims of the asserted patents. (Ex. B.) During a second meet and confer on October 1, Sysmex maintained its refusal to produce Dr. Madisetti for more than two hours. Nor did Sysmex consent to any supplemental BCI expert reports on invalidity or non-infringement, despite the implications of Dr. Madisetti's new opinions for those issues. Sysmex also disagreed that BCI could incorporate the testimony of Mr. Imazu in its invalidity theories or supplemental reports.

BCI expects many of the issues in the present motion may be resolved through the Court's adoption of a new case schedule (D.I. 357, 364). BCI thus presents the following arguments regarding previously unaddressed items, which may give context to the parties' scheduling dispute.

**I.      Dr. Madsetti's Deposition Should Continue for a Full Day**

There is no dispute that Dr. Madisetti should be deposed in light of his new opinions. The Court should require Dr. Madisetti to be available for up to a seven-hour deposition regarding the content of his supplemental report and new opinions in accordance with Fed. R. Civ. P. 30. Although BCI plans to take the deposition efficiently, Sysmex has no basis to arbitrarily and unilaterally limit this deposition to two hours.

Dr. Madisetti has extensive knowledge of the facts and theories in this case. BCI intends to question Dr. Madisetti on subjects that were impossible to cover during his first deposition because he had not produced his XE-5000 opinions. Since these opinions also implicate infringement and invalidity issues, BCI should be afforded enough time to explore the full ramifications of Dr. Madisetti's new theories, including his understanding of the similarities between Sysmex's XE-5000 source code and its prior art XE-2100 source code. (D.I. 369.) In addition, based on Dr. Madisetti's evasiveness in answering basic questions in his first deposition, BCI is concerned that a two-hour time constraint will not suffice. (*E.g.*, Ex. C.) Indeed, courts

Young Conaway Stargatt & Taylor, LLP
The Honorable Christopher J. Burke
October 14, 2021 - Page 2

have ordered re-depositions to last seven hours in similar circumstances. *See, e.g., Purdue Pharma L.P. v. Ranbaxy Inc.*, No. 3:12-MC-1 (CAR), 2012 WL 1414308, at *3 (M.D. Ga. Apr. 20, 2012).

Sysmex's insistence on a 120-minute deposition is also at odds with its own position in the co-pending *inter partes* review (IPR) between the parties. There, Sysmex successfully argued that BCI's expert should sit for a second *full-day* deposition on his 26-page supplemental declaration because (1) "limiting the time of the deposition . . . would prejudice [Sysmex's] ability to explore issues" in the declaration (2) "it was premature and speculative to limit [] [Sysmex's deposition] time" and (3) alleged "improper speaking objections and long pauses during the deposition would further limit the amount of time" available. (Ex. D.) The same reasoning applies equally here.

## II.    BCI Is Entitled to Respond Fully to Sysmex's New XE-5000 Positions

Sysmex seeks to prevent BCI and its experts from responding to the full scope of Dr. Madisetti's belated supplemental report, which has now been incorporated into Sysmex's interrogatory responses. (Ex. E.) Rather, Sysmex would limit BCI's experts to address the sole topic of whether the XE-5000 is covered by the asserted patents. But the effect of Dr. Madisetti's opinions and rationale reaches well-beyond his ultimate conclusion, as the Court expressly recognized at the August 3 hearing. (Ex. A, Hrg at 21:24–22:22) ("[T]here are other legal issues that are more nuanced that require to know why it is the XE-5000 is covered by the claims, not necessarily because it relates to the question of is the XE-5000 covered by the claims, but because it might relate to an invalidity issue with regard to another product that is asserted to be similar to the XE-5000 . . . .") Sysmex improperly attempts to re-argue this issue that was fully heard on August 3. BCI's experts should be able to address Sysmex's litigation positions through their own supplemental reports, including rebuttal and reply reports, as necessary. And BCI should not be kept from using Sysmex's belated interrogatory responses for its own contentions.

## III. BCI Should Be Permitted to Fully Use Mr. Imazu's Testimony

On August 25, the Court stayed this case pending the Imazu deposition because of the "real prejudice" BCI would have otherwise faced. (D.I. 357.) If BCI were now denied the use of that testimony—as Sysmex suggests should happen—then that "real prejudice" would persist. BCI should be permitted to include its discovery from Mr. Imazu into its expert reports and contentions.

As expected, Mr. Imazu's deposition confirmed that the named inventors lacked any explanation for evidence establishing that the ███████████████████████████████████ ██████████████████████████████████████████████████████████ (Ex. F.) Further, Mr. Imazu's testimony regarding the inventorship of the feature of ██████████████████████████████ ███████████████████████████████████ (*Id.*; Ex. G.) Mr. Imazu's testimony thus bolsters BCI's claims of inequitable conduct, and underscores defenses under 35 U.S.C. § 102(f). (D.I. 345.) Despite its diligence in pursuing Mr. Imazu's deposition, BCI had been deprived of the opportunity to include in its litigation positions any information that it has gained from Mr. Imazu. It is appropriate for BCI to incorporate such information now. Sysmex will suffer no prejudice, as it has been well-aware of these issues and will have an opportunity to respond through a responsive expert report. In contrast, BCI will suffer undue prejudice if it is prevented from using Sysmex's complete discovery, which—through no fault of BCI—was delayed by eight months. (D.I. 357.)

For the reasons above, the Court should confirm that the scope of additional discovery includes supplemental expert reports and invalidity contentions as to the legal theories implicated by Dr. Madisetti's report and Mr. Imazu's testimony, and that the parties may serve appropriate supplemental expert reports (including rebuttal and reply reports, as needed), followed by expert depositions regarding those reports.

**Young Conaway Stargatt & Taylor, LLP**

The Honorable Christopher J. Burke
October 14, 2021 - Page 3

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

cc:      Counsel of Record, Kelly F. Farnan, Esq. (by e-mail)

28710346.1

# EXHIBIT A

1           IN THE UNITED STATES DISTRICT COURT

2           IN AND FOR THE DISTRICT OF DELAWARE

3

4    SYSMEX CORPORATION, et al.,     )
                                     )
5    -------------------Plaintiffs,)
                                     ) Case No.
6           vs.                      ) 19-1642-RGA-CJB
                                     )
7    BECKMAN COULTER, INC.,          )
                                     )
8    -------------------Defendant.  )

9

10      TRANSCRIPT OF MOTION TO STRIKE AND DISCOVERY
                         DISPUTE

11

12

13         MOTION TO STRIKE AND DISCOVERY DISPUTE

14    had before the Honorable Christopher J. Burke,

15    U.S.M.J., via teleconference on the 3rd of

16    August, 2021.

17

18                       APPEARANCES

19          RICHARDS, LAYTON & FINGER, P.A.
               BY: KELLY E. FARNAN, ESQ.
20
                         -and-
21
            CROWELL & MORING, LLP
22             BY: JAMES SOBIERAJ, ESQ.
               JOSHUA JAMES, ESQ.
23
                            Counsel for Plaintiffs
24

25

1    (Appearances continued.)

2

3         YOUNG, CONAWAY, STARGATT & TAYLOR
            BY: MELANIE SHARP, ESQ.
4
                      -and-
5
          LEYDIG, VOIT & MAYER, LTD.
6           BY: DAVID M. AIRAN, ESQ.
            WALLACE H. FENG, ESQ.
7           AARON R. FEIGELSON, PhD.

8                          Counsel for Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    whether those same claims read on the prior art

2    XE-2100 product.  So that's one where they draw

3    the distinction between these two products, the

4    XE-5000, which they say is not prior art, and

5    the XE-2100, which is prior art.  And these are

6    very closely related products, and the software

7    is very similar.

8         To the extent they're saying, for

9    example, the XE-2100 lacks a controller but the

10   XE-5000 has a controller, that's information we

11   need to know, and we've asked for that.  It's

12   relevant to our validity challenge, and it's

13   also highly relevant to any proof that they

14   admit they have to provide for the XE-5000 to

15   be covered.  They have to give us the same type

16   of analysis of the XE-5000 that they have to do

17   for the XM products.

18        And we will dispute and do dispute that

19   the XE-5000 is not covered or is covered,

20   depending which way you want to look at it,

21   with respect to the XE-2100.  They can't have

22   their cake and eat it too.  If they're saying

23   the XE-5000 is covered, we need to know why.

24             THE COURT:  It sounds like what

25   you're saying is if it's just a question of

```
 1        whether the XE-5000 is covered by the claims,

 2        for purposes, for example, of, like, you

 3        know -- presuming the plaintiffs are using it

 4        for lost profits purposes, you're not

 5        necessarily objecting.  If that's all it was,

 6        there might not be an issue, if the legal

 7        question were just "Is the product covered by

 8        the claims?"

 9             But you're saying that there are other

10        legal issues that are more nuanced that require

11        to know why it is the XE-5000 is covered by the

12        claims, not necessarily because it relates to

13        the question of is the XE-5000 covered by the

14        claims, but because it might relate to an

15        invalidity issue with regard to another product

16        that is asserted to be similar to the XE-5000,

17        so you need to know why the XE-5000 is covered

18        because it will help you make other arguments

19        relating to another product regarding another

20        issue; is that right?

21             MR. AIRAN:  Yes, that's exactly

22        correct.

23             THE COURT:  Okay.  And is

24        interrogatory number three the mechanism by

25        which you should have been provided this
```

1    Dr. Madisetti were to provide a supplemental

2    report and he was to literally add a sentence

3    more, you're not giving up your ability to

4    object and say that's not the kind of

5    additional detail we were talking about.  But

6    as soon as he does provide a supplemental

7    report that does have a significant amount of

8    detail, a claim chart, et cetera, is that the

9    possible path to resolve that issue?  Is that

10   right?

11          MR. AIRAN:  Yes, that's correct, and

12   I would also point out that I believe that

13   there was a responsive report by a document

14   expert in response to some of these arguments

15   or opinions set forth by Dr. Madasetti, so that

16   would probably need to be in play as well.

17   We'd probably need a supplemental expert

18   from -- a Beckman Coulter expert as well.

19          THE COURT:  All right.  Well, I think

20   with regard to this issue, with regard to the

21   XE-5000 -- and, Mr. Airan, I'll give you a

22   chance in just a minute to address any issues

23   with regard to the XM series other than what's

24   filed on the issue of the XE-5000.

25          But just with with regard to the XE-5000

1    issue, I'm going to deny the motion for now as

2    moot in light of the fact that it seems to me,

3    from discussion on this call, there may be a

4    mutually agreeable way for the parties to

5    resolve the dispute with regard to the asserted

6    lack of substance of Dr. Madasetti's opinion

7    regarding the XE-5000.

8         I'll order that Plaintiffs' counsel and

9    Defendant's counsel further meet and confer to

10   discuss a process by which Dr. Madisetti will

11   supplement his expert report with regard to

12   that issue, including by providing additional

13   detail, for example, in the way of a claim

14   chart, explaining why it is the XE-5000 is

15   covered by the claims of the '350 and '351

16   Patents.

17        I'll ask the parties to also further meet

18   and confer as to what additional discovery

19   would have to be done with regard to that

20   supplemental opinion of the type that

21   Defendant's counsel has mentioned here on our

22   call today.

23        With regard to the main dispute about the

24   XM series products, Mr. Airan, anything else

25   you wish to add in rebuttal with regard to what

# EXHIBIT B

| | |
|---|---|
| From: | Farnan, Kelly E. |
| To: | Sharp, Melanie; Delcollo, Renee Mosley |
| Cc: | "Sobieraj, James"; "James, Joshua"; Feigelson, Aaron; Feng, Wallace; Hubbi, Adam; Mallin, Robert |
| Subject: | RE: Beckman 8-19-21 Joint Letter requesting Discovery Dispute Teleconference - Judge Burke.docx |
| Date: | Monday, August 23, 2021 4:45:02 PM |
| Attachments: | image001.png |

**[External Email]**

Melanie,

I am unable to see your letter since you sent a link that I can't access.  Regardless, the only issue that is ripe at this point is Sysmex's issue.

Dr. Madisetti's supplemental expert report was served on Friday, so any alleged dispute regarding the deadline for that report is now moot. If you believe additional discovery is needed because of this report, please send us a proposal of the specific discovery you seek, along with a schedule for the discovery, and we will consider it. If you believe an additional deposition of Dr. Madisetti is needed because of his supplemental report, we propose making Dr. Madisetti available for a 2-hour deposition. Dr. Madisetti is available for such a deposition on Wednesday September 1 and Thursday September 2. On Thursday, Dr. Madisetti has a hard stop at 1 pm ET. If you intend to serve an expert report responding to Dr. Madisetti's supplemental expert report, please provide a date certain by which you will serve the responsive expert report.

With respect to narrowing the case in advance of summary judgment, Sysmex has twice narrowed the number of asserted claims in this case. After initially asserting 57 claims, Sysmex now only asserts 15 claims for the '350 patent and 13 claims for the '351 patent. BCI, however, has not narrowed its number of invalidity positions and continues to assert invalidity positions against claims that are no longer asserted. Therefore, we renew our request that BCI provides a proposal about narrowing, especially as it pertains to BCI's failure to narrow any of its invalidity positions in response to Sysmex's reduction of the number of asserted claims.

Kelly

The information contained in this electronic communication is intended only for the use of the individual or entity named above and may be privileged and/or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution or copying of this communication is strictly prohibited by law. If you have received this communication in error, please immediately notify us by return e-mail or telephone (302-651-7700) and destroy the original message. Thank you.

**From:** Sharp, Melanie <msharp@ycst.com>
**Sent:** Monday, August 23, 2021 5:38 PM
**To:** Farnan, Kelly E. <Farnan@RLF com>; Delcollo, Renee Mosley <delcollo@rlf.com>
**Cc:** 'Sobieraj, James' <JSobieraj@crowell.com>; 'James, Joshua <jjames@brinksgilson com>; 'Feigelson, Aaron (afeigelson@leydig com)' <afeigelson@leydig com>; 'Feng, Wallace' <wfeng@ycst com>; Hubbi, Adam <AHubbi@ycst.com>
**Subject:** RE: Beckman 8-19-21 Joint Letter requesting Discovery Dispute Teleconference - Judge Burke docx

We are filing the attached letter

We have now reviewed the supplemental report of Madisetti served Friday August 29 at 4:29 p m   We note that Sysmex served it Friday afternoon, only after we sent our draft letter requesting a discovery dispute hearing (and much back and forth on the content), and after a lengthy meet and confer on August 17 during which Sysmex's counsel repeatedly stated that it would not give us a date certain for service of the report, instead representing only noncommittally that the report would be served "hopefully this week, and if not, then probably next week " Sysmex's counsel refused even to give a "no later than" date for service of the supplemental report   Obviously the report was ready or so near ready that Sysmex could have been appropriately cooperative

As we already stated on our meet and confer during which we reached impasse on both additional discovery relating to the supplemental Madisetti report and narrowing of claims, the Madisetti supplement necessitates inspection of source code, a deposition of Madisetti, a responsive report from our expert and that Sysmex immediately provide supplemental interrogatory responses

And we still have not received any proposal for narrowing claims, which is Sysmex's responsibility

All of the foregoing, as well as the issues already pending, necessitate adjustments to the scheduling order with which we need the Court's prompt assistance

All of this has already been the subject of a lengthy meet and confer during which we reached impasse  Yet Sysmex's counsel refused to consent to filing of the joint discovery dispute letter   If you have any edits we will consider them in the next 20 minutes, but we are filing   As I noted Friday (again), it is inappropriate to hold these discovery dispute letters hostage, especially when Sysmex then complains that the matters are not brought to the court's attention quickly enough



Melanie K. Sharp, Partner
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
P: 302.571.6681 | F: 302.576.3333
msharp@ycst.com | www.youngconaway.com | vCard

Sysmex objects to BCI's redactions to Exhibit C.

# EXHIBIT C

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

SYSMEX CORPORATION and       )
SYSMEX AMERICA, INC.,         )
                             )
          Plaintiffs,         )
                             )    No.
   vs.                        )    19-1642-RGA-CJB
                             )
BECKMAN COULTER, INC.,        )
                             )
          Defendant.          )
```

HIGHLY CONFIDENTIAL SOURCE CODE

The discovery videotaped video
teleconference deposition of DR. VIJAY MADISETTI,
called by the Defendant, for examination,
pursuant to notice, taken remotely before LAURA
MUKAHIRN, CSR, RPR, CRR, within and for the
County of Cook and State of Illinois, on July
21, 2021, scheduled to commence at 10:11 o'clock
a.m. CST.

```
 1    A P P E A R A N C E S:

 2       CROWELL & MORING
         BY:  MR. JAMES SOBIERAJ
 3            MR. JOSHUA JAMES
         jsobieraj@crowell.com
 4       jjames@crowell.com
         455 North Cityfront Plaza Drive
 5       Suite 3600
         Chicago, Illinois 60611
 6       (312) 321-4200
              Appeared on behalf of the Plaintiffs;
 7
         LEYDIG, VOIT & MAYER, LTD.
 8       BY:  MR. AARON FEIGELSON
              MR. WALLACE FENG
 9       afeigelson@leydig.com
         wfeng@leydig.com
10       Two Prudential Plaza
         Suite 4900
11       180 North Stetson Avenue
         Chicago, Illinois 60601
12       (312)616-5600
              Appeared on behalf of the Defendant.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

Dr. Vijay Madisetti  Highly Confidential Source Code
July 21, 2021

1   ██████████████████████████

2   ████████████████████████████

3   ████████████████████████████

4   ███████████████████

5   Q.    Where --

6   A.    ███████████████████

7   ██████████████████████████████

8   ███████████████████████████████

9   ███████

10   Q.    █████████████████████

11   █████████████████████████████████

12   █████████████████████

13   MR. JAMES:  Objection.  Form.

14   THE WITNESS:  My report speaks for itself.

15   It's several hundred pages.  █████████████

16   █████████████████████████████████████████

17   █████████████████████████████████████████

18   █████████████████████████████████████████

19   █████████████████████████████████████████

20   ████████   In addition to specific language from

21   the user manuals, ███████████████████████

22   ████████████████████████████████

23   ████████████

24   BY MR. FEIGELSON:

25   Q.    Dr. Madisetti, you agree that in



Dr. Vijay Madisetti  Highly Confidential Source Code
July 21, 2021

1    Paragraph 62 you don't cite to any Beckman

2    Coulter source code, right?

3        A.    As I said, you are to read through the

4    entire section.  I have provided a detailed

5    analysis over several dozen pages for different

6    limitations.  I intend to rely on all those

7    pages and the deposition testimony and

8    documentation and other materials that I cite

9    for support.

10

11

12

13

14

15

16       A.    I disagree.

17       Q.

18

19

20

21       A.

22

23

24

25

1     █████████      I discuss my own personal inspection of

2     the accused products on January 21st where

3     myself saw a demonstration of how the claim

4     limitations were met under these various

5     scenarios. ████████████████████████████████

6     ████████████████████████████████████████████

7     ████████████████████████████████████████████

8     ████████████████████████████████████████████

9     ████████████████████████████████████████████

10    ████████████████████████████████████████████

11        Q. ███████████████████████████████████

12    ████████████████████████████████████████████

13    ████████████████████████████████████████████

14    ████████████████████████████████████████████

15        A. ███████████████████████████████████

16    ████████████████████████████████████████

17    ████████████████████████████████ ████████████

18    ████████████████████████████████████████████

19    ████████████████████████████████████████████

20    ████████████████████████████████████████████

21    ████████████████████████████████████████████

22    ████████████████████████████████████████████

23    ████████████████████████████████████████████

24    ████████████████████████████████████████████

25    ████████████████████████████████████████████

Dr. Vijay Madisetti  Highly Confidential Source Code
July 21, 2021



```
 1
 2
 3
 4
 5
 6
 7
 8
 9    Q.
10
11
12
13
14    A.    I cite to,
15          I site to my inspection of the products.
16                                    I cite to product
17    manuals,
18
19
20
21
22    Q.
23
24
25
```

1          MR. JAMES:  Objection.  Form.

2          THE WITNESS:  I disagree with that.

3     BY MR. FEIGELSON:

4          Q.   Dr. Madisetti, is a hematology analyzer

5     a telecommunications device?

6          A.   I'm not sure as to the specific

7     question.

8          Q.   Are you familiar with the term

9     telecommunications device?

10         A.   Again, I'm not sure as to your specific

11    question.

12         Q.   Are you familiar with the term

13    telecommunications device?

14         A.   It depends, again, on the context.  So

15    I'm not sure as to your particular definition.

16         Q.   You don't have an understanding what a

17    telecommunications device is, Dr. Madisetti?

18         A.   As I said, it means different things in

19    different contexts.

20         Q.   In your experience in your 30 years,

21    have you ever used the term telecommunications

22    device?

23         A.   It depends, again, on different context

24    and the context in which I use.  So if

25    telecommunications device means that you're

1    that I list in Paragraphs 24, for example.

2         Q.   Dr. Madisetti, the three definitions

3    that you've provided from IBM and Newtons and

4    IEEE all define controller as either a device or

5    a group of devices; is that correct?

6         A.   As I said, these are sources of support

7    that provide support for certain opinions, and I

8    utilize them in the context in which I have

9    stated them in my report.  For the purposes of

10   my claim analysis for infringement, I've applied

11   the meaning as required by the code which is the

12   plain and ordinary meaning to a person of

13   ordinary skill in art.  And I've applied the

14   plain and ordinary meaning as I described in my

15   report through the sources of support that I

16   cite.

17        Q.   Dr. Madisetti, what is the plain and

18   ordinary meaning of controller?

19        A.   The plain and ordinary meaning of

20   controller is, as I describe in my report,

21   "controller programmed to."

22

23

24                                      These are

25   nonlimiting examples.

Dr. Vijay Madisetti  Highly Confidential Source Code
July 21, 2021

1      Q.   I'm not asking you for examples with

2   respect to the accused product.  I'm asking you

3   what a person of skill in the art -- a person of

4   ordinary skill in the art would understand a

5   controller to be?

6      A.   A controller is a controller.  And I

7   can only, in my analysis for infringement, I

8   have given what I understand as examples of how

9   a person of ordinary skill in the art would give

10   a plain and ordinary meaning to that

11   description.  ███████  █████████████  ███████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ███████████████████████████████████████████████

16      Q.   How would a person of ordinary skill in

17   the art determine whether something is a

18   controller or not?

19      A.   ████████████████████████ █ ███████████████

20   ██████████████████ ██████████████████████████

21   █████████████████ █████████████████████

22   █████████████████████████████

23   ███████████   And I identify the specific support

24   throughout my report and my reply report.

25      Q.   You don't have a definition of a

1    controller that you have applied in your

2    analysis as it would be understood by a person

3    of ordinary skill in the art, Dr. Madisetti?

4         MR. JAMES:  Objection.  Form.

5         THE WITNESS:  As I answered before, the code

6    has instructed that I apply the plain and

7    ordinary meaning, and I applied the plain and

8    ordinary meaning and provided you -- in response

9    to your questions -- several nonlimiting

10   examples of what these controllers are.  I've

11   given nonlimiting examples from different

12   definition, from different sources, from the

13   infringement products, and also from the patent

14   specification itself, in the patent

15   specification.  And a nonlimiting example of a

16   controller is very well described by nonlimiting

17   embodiment of Figure 2 where the microcomputer

18   6, for example, in Figure 2 of the '350 and the

19   '351 patents, is, again, a nonlimiting example

20   of a controller.  So I refer you to Figure 2 for

21   another example of what a person of ordinary

22   skill in the art would understand as the plain

23   and ordinary meaning of a controller.  And I

24   reviewed and referred to the code's construction

25   that's consistent with my understanding.

Dr. Vijay Madisetti  Highly Confidential Source Code
July 21, 2021

1    BY MR. FEIGELSON:

2        Q.    Dr. Madisetti, without reference to the

3    patent, when Judge Andrews asks you at trial,

4    "What would a person of ordinary skill

5    understand a controller to be," how do you

6    intend to answer him?

7        A.    As I said, I would reserve the right to

8    provide an answer as I see fit.  I've not

9    considered my testimony at trial.  But to the

10   extent that you're asking me about my reports, I

11   believe that I provide a number of responses to

12   you that are nonlimiting examples of what a

13   person of ordinary skill in the art would

14   understand as being satisfied in a controller.

15   I've referred to Figure 6, Block 6 in Figure 2

16   as an example.  ████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21       Q.    Can you give an example of a controller

22   outside of the context of the asserted patents?

23       A.    I'm not sure I understand the specific

24   question you are asking me to answer.

25       Q.    You say you've provided numerous

EXHIBIT D

Trials@uspto.gov                                    Paper 22
571-272-7822                          Entered: September 15, 2021


UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

BECKMAN COULTER, INC.,
Petitioner,

v.

SYSMEX CORPORATION and SYSMEX AMERICA, INC.,
Patent Owner.
_____

IPR2020-01503
Patent 10,401,351 B2
_____


Before CHRISTOPHER L. CRUMBLEY, JO-ANNE M. KOKOSKI, and
ELIZABETH M. ROESEL, *Administrative Patent Judges.*

KOKOSKI, *Administrative Patent Judge.*


ORDER
Conduct of the Proceeding
*37 C.F.R. § 42.5(a)*

A telephone conference was held on September 10, 2021 among counsel for Petitioner Beckman Coulter, Inc., counsel for Patent Owner Sysmex Corporation and Sysmex America, Inc., and Judges Crumbley, Kokoski, and Roesel.  The purpose of the call was to discuss the parties' request for assistance in settling a dispute regarding the duration of Patent Owner's deposition of Petitioner's reply declarant.  In particular, Patent Owner requested up to seven hours for the cross-examination of Dr. John W. Roche, consistent with the time limits provided in 37 C.F.R. § 42.53(c)(2), and Petitioner sought to limit the deposition to 6.5 hours of total time, including breaks.

During the call, Petitioner argued that a half-day of cross-examination testimony was sufficient because Dr. Roche already testified for one full day in this proceeding, as well as for a full day in the related district court proceeding.  Petitioner indicated that Dr. Roche's supplemental declaration is only 26 pages long, which is about one third of the length of Dr. Roche's primary declaration that was the subject of his first deposition, and is of limited scope.  Petitioner stated that it was concerned that Patent Owner, if given seven hours of cross-examination time, would improperly attempt to expand the scope of the deposition on the reply declaration in order to obtain discovery for use in the related litigation.  Petitioner further explained that, on the day of the scheduled deposition, there was a hard stopping time that required the day be limited as Petitioner proposed.

Patent Owner responded that limiting the time of the deposition as Petitioner proposes would prejudice its ability to explore the issues in Dr. Roche's reply declaration on cross-examination.  Patent Owner also noted that Dr. Roche's deposition in the related litigation is irrelevant to the

IPR2020-01503
Patent 10,401,351 B2

timing issues here, because the protective order in place in that proceeding precludes Patent Owner's use of Dr. Roche's testimony in this *inter partes* review.  Patent Owner further argued that it was premature and speculative to limit Patent Owner's time for cross-examination, and expressed concern that improper speaking objections and long pauses during the deposition would further limit the amount of time Patent Owner would have to question Dr. Roche.

After considering the parties' arguments, we determined that the default time limits set forth in 37 C.F.R. § 42.53(c)(2) set a baseline expectation for the duration of Dr. Roche's deposition.  The parties are, of course, free to negotiate other time limits as justified by the particular circumstances of the testimony, and the Board encourages the parties to do so whenever warranted.  We were not persuaded, however, that Petitioner established a sufficient basis for the Board to mandate a departure from the seven hours for cross-examination, four hours for redirect examination, and two hours for re-cross examination provided by the rule.  We further advised the parties that these time limits assume there are no excessive delays or improper objections, and if there are problems during the deposition, the parties should contact the Board for assistance.

The parties are also reminded that the Testimony Guidelines appended to the Consolidated Trial Practice Guide ("CTPG") at 127–130 (App. D, Testimony Guidelines) apply to this proceeding, and that we may impose an appropriate sanction for failure to adhere to the Testimony Guidelines.  *See* Paper 11, 4; 37 C.F.R. § 42.12.  In particular, Testimony Guideline 2 of the CTPG provides that an objection at the time of the examination to any aspect the testimony, such as a party's conduct the manner of taking testimony,

IPR2020-01503
Patent 10,401,351 B2

must be noted on the record, but the examination proceeds and testimony is taken subject to the objection.  CTPG at 128.  Testimony Guideline 3 provides that

> [a]n objection must be stated concisely in a non-argumentative and non-suggestive manner.  Counsel must not make objections or statement that suggest answer to the witness.  Objections should be limited to a single word of term.  Examples of objections that would be properly stated are: "Objections, form"; "Objection, heresay"; "Objection, relevance"; and "Objection, foundation."  Examples of objections that would not be proper are: "Objection, I don't understand the question"; "Objection, vague"; "Objection, take your time answering the question"; and "Objection, look at the document before you answer."  An objecting party must give a clear and concise explanation of an objection if requested by any party taking the testimony or the objection is waived.

*Id*.

Additionally, Testimony Guideline 9 provides that "the witness or a party may move to terminate the testimony on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses or oppresses the witness or party," and that "[t]he witness or party must promptly initiate a conference call with the Board to discuss the proposed motion."  *Id*. at 130 (citing 37 C.F.R. § 42.20(b)).  Thus, for example, if the parties are unable to reach an agreement on the proper scope of Dr. Roche's testimony, the proper course of action for Petitioner is to either (1) object on the record and proceed with the examination, subject to the objection, or (2) contact the Board immediately to present a motion to terminate or limit the testimony.

The parties are strongly cautioned to follow all rules applicable to this proceeding, including that "[e]very party must act with courtesy and

IPR2020-01503
Patent 10,401,351 B2

decorum, . . . including in interactions with other parties."  37 C.F.R.

§ 42.1(c).  If the parties follow the Testimony Guidelines, we expect that

they will be able to resolve most disputes without Board intervention.

In consideration of the foregoing, it is hereby:

ORDERED that Petitioner's request to limit the deposition of

Dr. Roche to 6.5 hours, including breaks, is *denied*.

FOR PETITIONER:

Wesley O. Mueller
Aaron R. Feigelson
Karen L. Shannon
LEYDIG, VOIT & MAYER, LTD.
wmueller@leydig.com
afeigelson@leydig.com
karen.shannon@beckman.com

FOR PATENT OWNER:

James R. Sobieraj
Robert S. Mallin
Tadashi Horie
Joshua H. James
Daniel A. Parrish
BRINKS GILSON & LIONE
jsobieraj@brinksgilson.com
rmallin@brinksgilson.com
thorie@brinksgilson.com
jjames@brinksgilson.com
dparrish@brinksgilson.com

# EXHIBIT E

THIS DOCUMENT CONTAINS
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY INFORMATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYSMEX CORPORATION and SYSMEX AMERICA, INC. | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No.: 19-1642-RGA-CJB |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| BECKMAN COULTER, INC., | ) ) ) | |
| Defendant | ) | |

**PLAINTIFF SYSMEX CORPORATION'S SUPPLEMENTAL RESPONSES TO BECKMAN COULTER INC.'S FIRST SET OF INTERROGATORIES (NO. 3) AND THIRD SET OF INTERROGATORIES (NO. 16)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Sysmex Corporation ("S-Corp") hereby supplements Interrogatory No. 3 of Beckman Coulter, Inc.'s ("BCI") First Set of Interrogatories (Nos. 1-8) and Interrogatory No. 16 of BCI's Third Set of Interrogatories (Nos. 14-18). In providing this supplemental response, S-Corp does not concede the relevancy, materiality, or admissibility of any such information and hereby reserves all objections.

## INTERROGATORIES

**INTERROGATORY NO. 3:**

Identify all products that you contend practice any claim of the Asserted Patents, including without limitation, all products sold by you, and/or any third party, and, separately for each product, identify the specific evidentiary bases that support your contentions, including but not limited to the identification of each claim of the Asserted Patents embodied by that product and identification of where each limitation of each patent claim of the Asserted Patents is found in that product.

**RESPONSE:**

In addition to its General Objections, Sysmex objects to this Interrogatory as being compound, consisting of several discrete subparts comprising multiple questions joined together into one interrogatory, in violation of the requirements of Rule 33. Sysmex also objects to this

1

will be burdensome. Sysmex has not refuted in its objection that the requested claim mapping 'would require dozens of attorney hours, consultation with BCI's outside expert, and numerous pages of dense analysis.'" (*Id.* at Dkt. 146 at 5.) Judge Lee agreed with BCI and overruled Sysmex's objection to the Magistrate Judge's Order: "Here, by contrast, BCI has explained that, 'the requested claim by claim analysis would require dozens of attorney hours, consultation with BCI's outside expert, and numerous dense pages of analysis.' ECF No. 128 at 5. The burden is likely to be especially onerous given that Sysmex requests claim-by-claim analysis for 'all previous and current versions of [the] DxH products.' ECF No. 147 at 3. Ultimately, Magistrate Judge Rowland credited BCI's estimate of the burden that complying with Sysmex's request would impose, and the Court sees no reason to second guess that finding. Fed. R. Civ. P. 72(a)." (*Id.* at Dkt. 199 at 5.) BCI's objection to providing the requested discovery in the Illinois case and the Court's decision apply equally here.

**SECOND SUPPLEMENTAL RESPONSE:**

S-Corp incorporates by reference the foregoing objections in this supplemental response. S-Corp incorporates by reference paragraphs 396-97 of the Opening Expert Report of Vijay Madisetti, Ph.D. Regarding Infringement of U.S Patent Nos. 10,401,350 and 10,401,351 and the exhibits cited therein, and the Supplemental Expert Report of Vijay Madisetti, Ph.D. Regarding the XE-5000 Being Covered by Asserted Claims and the exhibits cited therein.

## INTERROGATORY "NO. 16":

For each limitation of Claim 1 of United States Patent No. 10,401,350 that Sysmex identified in Sysmex's response to BCI's Interrogatory No. 10 as "not present in 'XE-2100 hematology analyzers running the Body Fluid Application, as described for example in the FDA 510(k) Application No. K040073,'" describe in detail how the XE-5000 hematology analyzer includes each such claim limitation, including an identification of all documents, source code, and other facts relating to your answer and all individuals having knowledge of those facts.

## RESPONSE:

In addition to its General Objections, S-Corp objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine, and/or other applicable privileges and protections. S-Corp further objects to this interrogatory as being vague and ambiguous with respect to the phrase "and other facts relating to your answer." S-Corp also objects to the request for "an identification of all documents, source code, and other facts relating to your answer and all individuals having knowledge of those facts" as overly broad and unduly burdensome. S-Corp further objects to the Interrogatory to the extent it seeks legal opinions or conclusions, or presents questions of pure law.

Subject to and without waiver of the foregoing objections, the XE-5000 includes a controller programmed to selectively operate the sample analyzer in a blood measuring mode or a body fluid measuring mode.

The blood measuring mode of the XE-5000 includes a sequence of operations for measuring cells in the blood sample, and the body fluid measuring mode of the XE-5000 includes a sequence of operations for measuring cells in the body fluid sample.

The XE-5000's respective sequence of operations for measuring cells in the blood sample and in the body fluid sample has (a) a sensing operation that includes preparing for measurement

**SECOND SUPPLEMENTAL RESPONSE:**

S-Corp incorporates by reference the foregoing objections in this supplemental

response. See also the deposition testimony of Takaaki Nagai at 19:14-22:19, 25:7-37:15,

52:16-53:10, 64:4-77:10, 80:9-81:23, 132:15-134:14, and 172:17-179:8.

**THIRD SUPPLEMENTAL RESPONSE:**

S-Corp incorporates by reference the foregoing objections in this supplemental

response. S-Corp incorporates by reference paragraph 396 of the Opening Expert Report of

Vijay Madisetti, Ph.D. Regarding Infringement of U.S Patent Nos. 10,401,350 and

10,401,351 and the exhibits cited therein, and the Supplemental Expert Report of Vijay

Madisetti, Ph.D. Regarding the XE-5000 Being Covered by Asserted Claims and the exhibits

cited therein.

OF COUNSEL:
James R. Sobieraj
Robert S. Mallin
Joshua H. James
Daniel A. Parrish
Crowell & Moring
455 N. Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611

Alexis White
Crowell & Moring
1001 Pennsylvania Avenue NW
Washington, DC 20004

Dated: September 3, 2021

*/s/ Kelly E. Farnan*
_____
Kelly E. Farnan (#4395)
Renée Mosley Delcollo (#6442)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
delcollo@rlf.com

*Attorneys for Plaintiffs Sysmex Corporation*
*and Sysmex America, Inc.*

BCI objects to certain of Sysmex's redactions to Exhibit F.

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - -x

SYSMEX CORPORATION and          :

SYSMEX AMERICA, INC.,           :

      Plaintiffs,          :   Civil Action No.

  v.                              :   19-1642-RGA-CJB

BECKMAN COULTER, INC.,          :

      Defendant.             :      Volume II

- - - - - - - - - - - - - -x


Continued videotaped remote deposition of

Masanori Imazu

September 28, 2021

1955 UTC



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY




Job No.: 1094080

Pages: 71 - 151

Reported By: Alan H. Brock, RDR, CRR

```
 1                    A P P E A R A N C E S

 2

 3   ON BEHALF OF PLAINTIFFS:

 4       JAMES R. SOBIERAJ, ESQ.

 5       TADASHI HORIE, ESQ.

 6       CROWELL & MORING LLP

 7       455 North Cityfront Plaza Drive, Suite 3600

 8       Chicago, Illinois 60611

 9       312.321.4200

10       jsobieraj@crowell.com

11       thorie@crowell.com

12

13   ON BEHALF OF DEFENDANT:

14       WESLEY O. MUELLER, ESQ.

15       WALLACE H. FENG, ESQ.

16       LEYDIG, VOIT & MAYER, LTD.

17       Two Prudential Plaza, Suite 4900

18       180 North Stetson Avenue

19       Chicago, Illinois  60601

20       312.616.5600

21       wmueller@leydig.com

22       wfeng@leydig.com

23

24

25
```

1   ALSO PRESENT:

2       John Schmitzer, Videographer

3       Risa Marburg, Interpreter

4       Kaori Stearney, Check Interpreter

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 1 | Exhibit 173, which is the document we've been | 18:33 |
| 2 | talking about for the last several hours, was an | 18:33 |
| 3 | email that originated from your files and you were | 18:33 |
| 4 | the custodian.  Do you have any reason to dispute | 18:33 |
| 5 | that Exhibit 173 originated from your files? | 18:33 |
| 6 | MR. SOBIERAJ:  Objection, lack of | 18:34 |
| 7 | foundation and form. | 18:34 |
| 8 | MS. STEARNEY:  The objection was not | 18:34 |
| 9 | interpreted. | 18:34 |
| 10 | THE INTERPRETER:  Sorry, I was just | 18:34 |
| 11 | about to. | 18:34 |
| 12 | (Objection was interpreted.) | 18:34 |
| 13 | A.  Whether I own this email or not, I do not | 18:35 |
| 14 | remember; therefore I cannot answer. | 18:35 |
| 15 | Q.  ███████████████████████ | 18:35 |
| 16 | ██████████████████████████████████ | 18:35 |
| 17 | ████████████████████████████████ | 18:35 |
| 18 | ████████ ██ ██████ | 18:35 |
| 19 | MR. SOBIERAJ:  Objection, lack of | 18:36 |
| 20 | foundation and form. | 18:36 |
| 21 | A.  Because I don't remember about this email, | 18:36 |
| 22 | I cannot answer. | 18:36 |
| 23 | Q.  ██████████████████████████ | 18:36 |
| 24 | ██████████  ████████████████ | 18:37 |
| 25 | ████████████████  ████████████ | 18:37 |



| | | |
|---|---|---|
| 1 | ████ | 18:37 |
| 2 | MR. SOBIERAJ: Objection, lack of | 18:37 |
| 3 | foundation and form. | 18:38 |
| 4 | A. ████████████████████ | 18:38 |
| 5 | ██████████████████████████ | 18:38 |
| 6 | ██████████████████████████ | 18:38 |
| 7 | ████████; therefore I cannot answer. | 18:38 |
| 8 | Q. ████████ ██████ | 18:39 |
| 9 | ████████████████████████ | 18:39 |
| 10 | ████████████████ | 18:39 |
| 11 | MR. SOBIERAJ: Objection to the form of | 18:39 |
| 12 | the question. | 18:40 |
| 13 | A. Since I do not remember about this email, I | 18:40 |
| 14 | am not able to answer. | 18:40 |
| 15 | Q. ████████████████████ | 18:40 |
| 16 | ████████████ | 18:40 |
| 17 | MR. SOBIERAJ: Objection to the form of | 18:40 |
| 18 | the question. | 18:40 |
| 19 | A. ███ ████████████████ | 18:40 |
| 20 | ████████████████ | 18:41 |
| 21 | ██████████████ | 18:41 |
| 22 | ██ ██████████ | 18:41 |
| 23 | ████████████████████ | 18:41 |
| 24 | MR. SOBIERAJ: Objection to the form of | 18:41 |
| 25 | the question. | 18:42 |

BCI objects to Sysmex's redactions on this page of Exhibit E



| | | |
|---|---|---|
| 1 | A. No, I don't know. | 18:42 |
| 2 | Q. | 18:42 |
| 3 | MR. SOBIERAJ: Objection to the form of | 18:42 |
| 4 | the question. | 18:43 |
| 5 | A. | 18:43 |
| 6 | therefore I | 18:43 |
| 7 | cannot answer. | 18:43 |
| 8 | Q. | 18:43 |
| 9 | | 18:43 |
| 10 | | 18:43 |
| 11 | | 18:43 |
| 12 | | 18:44 |
| 13 | | 18:44 |
| 14 | | 18:44 |
| 15 | | 18:44 |
| 16 | | 18:44 |
| 17 | | 18:45 |
| 18 | | 18:45 |
| 19 | | 18:45 |
| 20 | | 18:45 |
| 21 | | 18:45 |
| 22 | | 18:46 |
| 23 | | 18:46 |
| 24 | | 18:46 |
| 25 | | 18:46 |



1    in the absence of any documents showing otherwise?                          18:55

2              MR. SOBIERAJ:  Objection, lack of                                 18:56

3    foundation and form.                                                        18:57

4       A.  You see, I have absolutely no recollection                          18:57

5    of this email or about this person ████, and I also                        18:57

6    do not have a recollection regarding whether there                         18:57

7    is the document that indicates any foundation of my                        18:57

8    invention in this patent; therefore I am not able to                       18:57

9    answer.                                                                    18:57

10      Q.  ████████████████████████████                                         18:57

11   ████████████████████████████  ████████                                     18:57

12   ██████████████████████████████                                             18:57

13             MR. SOBIERAJ:  Objection, lack of                                 18:58

14   foundation and form.                                                       18:58

15      A.  Can you repeat the question again, please?                          18:58

16      Q.  ████████████████████████████████                                    18:58

17   ████████████████████  ████████████████                                     18:58

18   ████████████████████                                                       18:58

19             MR. SOBIERAJ:  Objection, lack of                                 18:59

20   foundation and form.                                                       19:00

21      A.  █ ████ █ █████████████████████                                      19:00

22   ██████████████████████████████                                             19:00

23   ████████████  ████████  ████████████  ██                                   19:00

24   ████████████████████████                                                   19:00

25      Q.  ██████████████████████████                                          19:01

BCI objects to Sysmex's redactions on this page of Exhibit E

| | | |
|---|---|---|
| 1 | ████████████████████████████ | 19:01 |
| 2 | ████████████ | 19:01 |
| 3 | MR. SOBIERAJ:  Objection to the form of | 19:01 |
| 4 | the question. | 19:02 |
| 5 | A.  ██████████████████  ██████ | 19:02 |
| 6 | ██████████████████████████ | 19:02 |
| 7 | ███████████████  █████████████ | 19:02 |
| 8 | ██████████████████████ | 19:02 |
| 9 | ██████████  Therefore I cannot answer. | 19:03 |
| 10 | MR. MUELLER:  Let me ask the court | 19:03 |
| 11 | reporter to move a document which is marked as HH to | 19:03 |
| 12 | the common area, and we'll mark that as Exhibit 175. | 19:03 |
| 13 | (DDX Exhibit 175 marked for | 19:03 |
| 14 | identification.) | 19:03 |
| 15 | MR. SOBIERAJ:  Do you have a machine | 19:03 |
| 16 | translation of that document? | 19:03 |
| 17 | MR. MUELLER:  I do, and it should be the | 19:03 |
| 18 | same exhibit number, which we can -- which I'll ask | 19:03 |
| 19 | to make visible. | 19:03 |
| 20 | And for the court reporter, it would | 19:04 |
| 21 | bear the same Bates number.  It's 30470 -- I'm | 19:04 |
| 22 | sorry, 304270. | 19:04 |
| 23 | Q.  Mr. Imazu, do you see Exhibit 175 in front | 19:04 |
| 24 | of you? | 19:05 |
| 25 | A.  Yes, I can see it. | 19:05 |

| | | |
|---|---|---|
| 1 | (DDX Exhibit 178 marked for | 21:58 |
| 2 | identification.) | 21:59 |
| 3 | MR. SOBIERAJ:  Is there also a | 21:59 |
| 4 | translation? | 21:59 |
| 5 | MR. MUELLER:  Yeah, I think those were | 21:59 |
| 6 | marked.  Or -- | 21:59 |
| 7 | THE VIDEOGRAPHER:  I just uploaded them. | 21:59 |
| 8 | Q.  Have you had a chance to review Exhibit | 22:00 |
| 9 | 178, Mr. Imazu? | 22:00 |
| 10 | A.  Yes, I can see it right now. | 22:00 |
| 11 | Q.  This is an email from you? | 22:00 |
| 12 | A.  Yes, I can confirm that my name is listed | 22:00 |
| 13 | in the "from" section. | 22:00 |
| 14 | Q.  And the email is dated January 31st, 2014; | 22:00 |
| 15 | correct? | 22:01 |
| 16 | A.  Yes, I can confirm that in the "sent" | 22:01 |
| 17 | section the date is listed as January 31st, 2014. | 22:01 |
| 18 | Q. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 22:01 |
| 19 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 22:01 |
| 20 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 22:01 |
| 21 | ▓▓▓▓ | 22:01 |
| 22 | ▓▓ ▓▓▓ ▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ | 22:02 |
| 23 | ▓▓▓▓▓▓▓ | 22:02 |
| 24 | Q.  And can you read into the record beginning | 22:03 |
| 25 | at the fifth line down through the ninth line of the | 22:03 |



| | | |
|---|---|---|
| 1 | email? | 22:03 |
| 2 | A.  When you say the fifth line, which part do | 22:03 |
| 3 | I start with? | 22:03 |
| 4 | Q.  If I could read Japanese, I would tell you. | 22:03 |
| 5 | The text that begins after the | 22:03 |
| 6 | hyperlink. | 22:03 |
| 7 | A.  So that will be the sentence right -- that | 22:04 |
| 8 | follows right after the link; right? | 22:04 |
| 9 | Q.  Correct. | 22:04 |
| 10 | A. | 22:06 |
| 11 | | 22:06 |
| 12 | | 22:06 |
| 13 | | 22:06 |
| 14 | | 22:06 |
| 15 | | 22:06 |
| 16 | | 22:07 |
| 17 | | 22:07 |
| 18 | | 22:07 |
| 19 | | 22:07 |
| 20 | | 22:07 |
| 21 | | 22:07 |
| 22 | | 22:07 |
| 23 | | 22:07 |
| 24 | | 22:07 |
| 25 | | 22:07 |



| | | |
|---|---|---|
| 1 | ███████ █ ███████████ | 22:08 |
| 2 | ██████ ██████████████████ | 22:08 |
| 3 | ████ | 22:08 |
| 4 | Q.  Now, is the explanation -- | 22:08 |
| 5 | MR. SOBIERAJ:  Wes, I think we're over | 22:08 |
| 6 | the amount of available time you have.  I'll allow | 22:08 |
| 7 | you to ask a few more questions, but then we need | 22:08 |
| 8 | to -- | 22:08 |
| 9 | MR. MUELLER:  I'm going to try -- I'll | 22:08 |
| 10 | try and wrap it up.  Thanks, counsel. | 22:08 |
| 11 | Q.  ████████ ██ ██ █ ████████ | 22:08 |
| 12 | ████████████████████████ | 22:08 |
| 13 | ████████████████████ | 22:08 |
| 14 | ██████████████████████████ | 22:08 |
| 15 | ████ █████ █ ███████ | 22:08 |
| 16 | ███ █████████████ | 22:09 |
| 17 | ██████ | 22:10 |
| 18 | █ ██████ █ ███████████ | 22:10 |
| 19 | ████ ████████████████ | 22:10 |
| 20 | ██████████ | 22:10 |
| 21 | MR. MUELLER:  And let me ask the court | 22:10 |
| 22 | reporter to quickly move over Exhibit JJ and mark | 22:10 |
| 23 | that as Exhibit 179. | 22:10 |
| 24 | MR. SOBIERAJ:  I'm not going to -- we're | 22:10 |
| 25 | over the time limit, counsel.  I'm not going to | 22:10 |

EXHIBIT G

**From:** Hiroyuki_Inoue/jp/SYSMEX
**Subject:** SEG Kalkmanさん資料（2004/10/15）



報告者 Hiroyuki Inoue
報告作成日: 10/18/2004 11:28 AM
修 正 者
修正日時

Highly Confidential – Attorney's Eyes Only



## Confidential Information







SCorp-Del00336499



*Confidential Information*



Highly Confidential – Attorney's Eyes Only

SCorp-Del00336507

# Japanese Machine Translation of SCorp-Del00336498

From:        Hiroyuki_Inoue/jp/SYSMEX
Subject:     Material by SEG Kalkman (2004/10/15)



=================================================================

Reporter Hiroyuki Inoue
Report creation date: 10/18/2004 11:28 AM
Corrector
Modification date and time