IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYSMEX CORPORATION; and SYSMEX AMERICA, INC.,<br><br>   Plaintiffs,<br><br>   v.<br><br>BECKMAN COULTER, INC.,<br><br>   Defendant. | **CIVIL ACTION NO. 19-1642-JFB-CJB**<br><br>**MEMORANDUM AND ORDER** |

## I. INTRODUCTION

This matter is before the Court on the report and recommendation regarding claim construction issued by Magistrate Judge Christopher J. Burke. D.I. 230. Defendant Beckman Coulter, Inc. ("BCI"), has filed objections to the report and recommendation, D.I. 257, and Plaintiffs Sysmex Corporation and Sysmex America, Inc. (jointly, "Sysmex") have responded to the objections, D.I. 284. The Court adopts the magistrate judge's recommendations in full.

## II. STANDARD OF REVIEW

A district court may modify or set aside any part of a magistrate judge's order that is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Similarly, Rule 72 requires de novo

1

review of any recommendation that is dispositive of a claim or defense of a party. Fed. R. Civ. P. 72(b)(3).

The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters are governed by § 636(b)(1)(A) and dispositive matters are covered by § 636(b)(1)(B). *Gomez v. United States*, 490 U.S. 858, 873–74 (1989); *see also* Fed. R. Civ. P. 72(a). Under subparagraph (b)(1)(B), a district court may refer a dispositive motion to a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B); *see EEOC v. City of Long Branch*, 866 F.3d 93, 99–100 (3d Cir. 2017). The product of a magistrate judge, following a referral of a dispositive matter, is often called a "report and recommendation" ("R&R"). *See Long Branch*, 866 F.3d at 99–100. "Parties 'may serve and file specific written objections to the proposed findings and recommendations' within 14 days of being served with a copy of the magistrate judge's report and recommendation." *Id.* at 99 (quoting Fed. R. Civ. P. 72(b)(2)).

"If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)).

Objections to claim-construction determinations in an R&R are reviewed de novo. *See St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 691 F. Supp. 2d 538, 542 (D. Del. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Claim construction falls "exclusively within the province of the court," not that of the jury. *Teva*

*Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)). It is proper for courts to "treat the ultimate question of the proper construction of the patent as a question of law in the way that [courts] treat document construction as a question of law." *Id.* at 837

## III.  DISCUSSION

Sysmex is the assignee of the asserted patents, the '350 and '351 patents.[1] D.I. 1 at 2. The asserted patents describe "sample analyzers having a plurality of detectors for sensing blood samples or body-fluid samples, including at least one multi-mode detector that can operate in both the blood measuring mode and the body fluid measuring mode." D.I. 1 at 3. The parties set out eight disputed claim terms for the Court's review. Following briefing, D.I. 133, and a *Markman* hearing, D.I. 146, the magistrate judge issued his R&R construing the disputed claim terms, D.I. 230. BCI objects to two of Judge Burke's recommended constructions, "controller programmed to" and "a blood measuring mode / a body fluid measuring mode." D.I. 257. The Court has reviewed the parties' claim-construction filings, D.I. 96; D.I. 133, the transcript of the *Markman* hearing, D.I. 146, Judge Burke's claim-construction R&R, D.I. 230, BCI's objection to the R&R, D.I. 257, and certification, D.I. 266, as well as Sysmex's response to the objection, D.I. 284.

### A.  Principles of Claim Construction

The claims of a patent define the scope of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). The claims of a patent are of primary importance in determining what is patentable and the function and purpose of a claim is to "delimit the right to exclude." *Id.* The purpose of claim construction is to "determin[e]

---

[1] The parties agree the asserted patents share the same specification and thus the magistrate judge cited primarily to the '350 patent in his claim-construction order. D.I. 133 at 2; D.I. 230 at 2.

the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). A claim construction order will dictate how the court will instruct the jury regarding a claim's scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008).

The process of construing a claim term begins with the words of the claims. *Phillips*, 415 F.3d at 1312–14; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[A]bsent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis." *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008) (citing *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000)). However, the claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979); *see Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014) (stating in claim construction, the court "gives primacy to the language of the claims, followed by the specification"). Additionally, the prosecution history, while not literally within the patent document, serves as intrinsic evidence for purposes of claim construction. *See Phillips*, 415 F.3d at 1317.

If a claim term remains ambiguous after an examination of intrinsic evidence, the court may resort to extrinsic evidence. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001). Extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises. *Phillips*, 415 F.3d at 1317–18. Extrinsic evidence is less reliable and less persuasive than intrinsic evidence since such evidence is not part of the patent and was not created concurrently with the prosecution of the

patent. *Id.* at 1317–19; *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Although courts are permitted to consider extrinsic evidence, like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record."). "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" *Summit 6, LLC*, 802 F.3d at 1290 (quoting *Phillips*, 415 F.3d at 1324).

"[A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *O2 Micro Int'l Ltd.*, 521 F.3d at 1360. However, when the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *See id.*

The words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art in question at the time of the invention. *Phillips*, 415 F.3d at 1313. The inquiry into how a person of ordinary skill in the art understands a term provides an objective baseline for which to begin claim interpretation. *Id.* "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

**B. The Claim Terms**

    1. *Claim Terms to which the Parties Did Not Object*

The parties did not object to the magistrate judge's construction of six of the eight claim terms as follows:

5

1) *"Separately displaying"* / *"separately display."*  The magistrate judge adopted Sysmex's proposed construction and construed these terms to mean "are each individually displayed."  D.I. 230 at 16–19.  He rejected BCI's proposed construction of plain and ordinary meaning because the intrinsic evidence (including the claim language and figures) as well as extrinsic dictionary evidence demonstrated the drafters meant "separately" to mean "individually."  D.I. 230 at 19.

2) *"Display on an input screen (1) at least two sample-type options that comprise concurrent display of a blood sample option and a body fluid sample option each [independently selectable / selectable independently] from the other on the input screen."*  The magistrate judge concluded that, based on the briefing, there was no real dispute as to this term and thus concluded it should be afforded its plain and ordinary meaning.  D.I. 230 at 21–22.

3) *"A second test result screen."*  The magistrate judge adopted Sysmex's proposed construction and construed this term to mean "a body fluid measuring mode test result screen not used in the blood measuring mode."  D.I. 230 at 25.  It rejected BCI's contention that the second test results screen was not "mutually exclusive of other screens" and could therefore possibly include a blood measuring mode because the plain language of the claims indicated the two-test results screen were not the same and the second test result screen is specific to the body fluid measuring mode.  D.I. 230 at 23–24.

4) *"Electrical detector"* and *"optical detector."*  Sysmex proposed these terms be afforded their plain and ordinary meaning while BCI proposed that "electrical

6

detector" be construed to mean a "detector that measures electrical properties of blood and body fluid, rather than optical properties" while "optical detector" be construed to mean a "detector that measures optical properties of blood and body fluid, rather than electrical properties." D.I. 230 at 25–26. The Court agreed with BCI because the claim requires a "plurality of detectors" that comprise "at least one optical detector" and "at least one electrical detector," thereby indicating the two detectors are different detectors rather than the same detector. D.I. 230 at 26. Thus, the magistrate judge recommended that "electrical detector" be construed to mean "detector that measures electrical properties, rather than optical properties" and the term "optical detector" be construed to mean "detector that measures optical properties, rather than electrical properties." D.I. 230 at 27–28.

5) *"Mono-nucleated cells" and "poly-nucleated cells."* Sysmex proposed no construction was needed for these terms, or, alternatively, "cells with a single nucleus" and "cells with two or more nuclei," respectively. D.I. 230 at 28. In contrast, BCI contended that mono-nucleated cells should be limited to "lymphocytes and monocytes" while poly-nucleated cells should be limited to "neutrophils, eosinophils, and basophils," all specific types of white blood cells. D.I. 230 at 28. Because the claims themselves did not limit these types of cells in the way BCI proposed, the magistrate judge recommended that "mono-nucleated cells" be construed to mean "cells with a single nucleus" and "poly-nucleated cells" be construed to mean "cells with two or more nuclei." D.I. 230 at 33.

6) *"Total [count] of nucleated cells."* Because the parties' dispute over this claim term mirrored their dispute over the terms "mono" and "poly" nucleated cells,

the magistrate judge again concluded that the total cell count was not limited to the five types of white blood cells BCI proposed and thus recommended this term be construed to mean "total [count] of cells having one or more nucleus." D.I. 230 at 33–35.

Having reviewed the record, the Court agrees the magistrate judge correctly construed these six unobjected-to claim terms.

### 2. Claim Terms to Which BCI Objects

BCI objects to the magistrate judge's construction of the two remaining claim terms: "controller programmed to" and "a blood measuring mode / a body fluid measuring mode."

The first disputed term, "controller programmed to," appears in every independent claim of the asserted patents. *See* D.I. 20 at 5. As to the term "controller programed to," Sysmex proposed no construction was necessary and the term should be given its plain and ordinary meaning. D.I. 230 at 6. BCI contended that this was a means-plus-function term within the meaning of 35 U.S.C. § 112(f) which provides, "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." The magistrate judge recommended adopting Sysmex's proposal and finding no construction was needed for this term. *Id.* at 13. BCI objects to the magistrate judge's recommended construction, arguing the magistrate judge ignored its argument that this term goes beyond what a person of ordinary skill in the art would understand a "controller" to mean, that Sysmex has changed its definition of "controller" via its final infringement contentions, and that the

8

magistrate judge ignored BCI's expert witness's testimony and misread the applicable case law. D.I. 257.

The standard by which a court determines "whether § 112, para. 6 applies 'is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.'" *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1297 (Fed. Cir. 2018) (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)). If the claim term does not use the word "means," there is a rebuttable presumption that the provision does not apply and the party claiming it is a means-plus-function term must demonstrate by a preponderance of the evidence that the claim "fails to recite sufficiently definite structure" or "recites a function without reciting sufficient structure for performing that function." *Id.* at 1298.

The Court agrees with the magistrate judge that BCI did not meet its burden to show that "controller programmed to" should be construed as a means-plus-function term. In particular, the magistrate judge correctly pointed to case law demonstrating that "controller" describes a known class of structures and is not merely a nonce term describing only functions. D.I. 230 at 6–11. In its objection, BCI reiterates its same arguments and claims that Sysmex's final infringement contentions changed the way Sysmex proposed to construe this term. D.I. 257 at 4–10. The magistrate judge thoroughly addressed all of BCI's arguments in his R&R, and Sysmex's infringement contentions do not raise novel arguments nor are they properly considered for purposes of claim construction. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330–31 (Fed. Cir. 2006) ("[C]laims may not be construed with reference to the accused device." (quoting *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d

1062, 1074 (Fed. Cir. 2002))). The Court therefore adopts the magistrate judge's recommendation that the term "controller programmed to" is not a means-plus-function term and that no construction is needed for this term. D.I. 230 at 13.

Finally, as to the terms "a blood measuring mode" and "a body fluid measuring mode," the parties dispute whether the two modes must be defined to exclude one another. D.I. 230 at 13. The magistrate judge agreed with Sysmex that, in light of the claim language and intrinsic record, "a blood measuring mode" should be construed to mean "a sample analyzer operation mode, different from the body fluid measuring mode, used for measuring cells in a blood sample" and "a body fluid measuring mode" should be construed to mean "a sample analyzer operation mode, different from the blood measuring mode, used for measuring cells in a body fluid sample." Id. at 16; see also Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." (quoting Gaus v. Conair Corp., 363 F.3d 1284, 1288 (Fed. Cir. 2004))).

BCI objects to this construction, arguing it is inadequate because it does not define what "mode" means. D.I. 257 at 11. This is a novel argument that BCI did not raise in previous briefing or at the *Markman* hearing. Furthermore, in light of the evidence and reasoning cited by the magistrate judge, the Court finds his recommended construction of these terms is correct.

**IV.   CONCLUSION**

After carefully reviewing the report and recommendation on claim construction de novo, the Court finds the magistrate judge is correct in all respects and adopts his report and recommendation in claim construction, D.I. 230, in its entirety.

THEREFORE, IT IS ORDERED:

1. Defendant Beckman Coulter Inc.'s objections, D.I. 257, are overruled, and
2. The Court adopts magistrate judge's report and recommendation on claim construction, D.I. 230, in its entirety.

Dated this 27th day of April, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge